UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHANG FANG, et al.,

                Plaintiffs,

      v.

CMB EXPORT INFRASTRUCTURE
INVESTMENT GROUP 48, LP, et al.,

                Defendants.

No. 2:24-cv-01618-DJC-SCR

**<u>ORDER</u>**

Plaintiffs brought the present action on behalf of themselves and those similarly situated.  Plaintiffs claim that they were induced to invest in a limited partnership in order to obtain EB-5 visas due to Defendants' misrepresentations and that their investment was lost due to Defendants' mismanagement of the limited partnership.  Defendants have filed a Motion to Dismiss (ECF No. 35) that seeks dismissal of all of Plaintiffs' claims, on a variety of bases.

For the reasons stated below, Defendants' Motion to Dismiss is granted in part and denied in part.[1]

////

////

---

[1] The Court simultaneously addresses the Motions to Dismiss in this action and the related action, *Bai v. CMB Export Infrastructure Investment Group 48, LP*, No. 2:24-cv-00807-DJC-SCR.

**BACKGROUND**

Plaintiffs Chang Fang and Yu Lin are spouses who invested $500,000 in a limited partnership, Defendant Group 48[2], as limited partners. Plaintiffs' investment qualified them for a visa via the EB-5 Immigrant Investor Program. Defendant Group 48 was set up by Defendant CMB Export with Defendants CMB Export and NK Immigration Services, LLC serving as general partners of Defendant Group 48 and EB-5 investors serving as limited partners. Defendant CMB Export itself was established by Defendant CMB Regional Centers, a privately held, federally designated regional center for EB-5 investors. Defendant Patrick Hogan originally founded Defendant CMB Regional Centers, and he serves as its CEO. Defendant Patrick Hogan also manages Defendant CMB Export and was previously listed as owner, though ownership has since transferred to two trusts.

Defendant Group 48 was created for the purpose of partially funding the redevelopment of the Century Plaza (the "Project"). Defendant Group 48 entered into an agreement with the developer of the Project to provide $450 million in funding for the Project. The agreement set up this funding as a loan subordinate to a construction loan. Defendants subsequently marketed the Project as an investment opportunity to potential EB-5 investors, in part using a 34-page "Project Overview Document" which provided the details of the investment. After Plaintiffs agreed to invest in Group 48, they were provided a Limited Partnership Agreement ("LPA") which they signed.

When the Project faced financial difficulty, additional funding was brought in to secure the Project. However, the newer investments were given priority over Group 48's investment. Ultimately, the Project failed and Group 48's investment (and thus Plaintiffs' investments) was lost due to the presence of loans with senior position.

---

[2] Group 48's full name is CMB Export Infrastructure Investment Group 48, LP. Given the similarity in name between three defendants (CMB Export LLC, CMB Export Infrastructure Investment Group 48, LP, and CMB Regional Centers), the Court refers to the limited partnership (CMB Export Infrastructure Investment Group 48, LP) as "Group 48", CMB Export LLC as "CMB Export", and CMB Regional Centers by its full name.

1  Plaintiffs claim that Defendants failed to take proper action to protect the Plaintiffs'
2  investment and ignored risks to that investment that were readily apparent.  Plaintiffs
3  also claim that Defendants misrepresented their own experience and skills to induce
4  them to invest in Group 48 as well as misrepresenting the status of the Project as it
5  progressed.

6       Defendants have now filed a Motion to Dismiss for Lack of Personal Jurisdiction
7  as to Defendant Noreen Hogan under Federal Rule of Civil Procedure 12(b)(2) and for
8  Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6).  (Mot. (ECF No.
9  35).)  This matter has been fully briefed and on October 31, 2024, the Court heard oral
10  argument from the parties, at which time the matter was submitted.  (*See* Mot.; Opp'n
11  (ECF No. 41); Reply (ECF No. 42); *see also* ECF No. 45.)

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

12
13  **I.    Legal Standard**

14       **A. Personal Jurisdiction Generally**

15       Rule 12(b)(2) allows a party to assert a lack of personal jurisdiction as a defense
16  and request dismissal of the suit.  Fed. R. Civ. P. 12(b)(2).  "Although the defendant is
17  the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff
18  bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l*
19  *Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary
20  hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to
21  withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606
22  F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151,
23  1154 (9th Cir. 2006)).  "The court may consider evidence presented in affidavits to
24  assist it in its determination and may order discovery on the jurisdictional issues." *Doe*
25  *v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by*
26  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citing *Data Disc, Inc. v. Sys. Tech.*
27  *Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  Facts presented by the plaintiff are
28  taken as true for the purposes of a 12(b)(2) motion to dismiss, except where

3

1   contradicted by an affidavit, and any "conflicts between the facts contained in the

2   parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding

3   whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie*

4   *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted); *see Mavrix*

5   *Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not

6   assume the truth of allegations in a pleading which are contradicted by affidavit, but

7   we resolve factual disputes in the plaintiff's favor." (citations and internal quotations

8   removed)).

9       "In exercising personal jurisdiction, a federal district court is constrained by the

10  Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in

11  which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir.

12  2023). California's long-arm statute allows the exercise of personal jurisdiction to the

13  extent allowed by the United States Constitution. *See* Cal. Code Civ. Proc. § 410.10.

14  Accordingly, the Court need only assess whether the exercise of jurisdiction in this

15  case comports with due process.

16      **B.  General and Specific Jurisdiction**

17      "The Due Process Clause permits the exercise of personal jurisdiction if the

18  defendant has sufficient minimum contacts with the forum state such that the

19  maintenance of the suit does not offend traditional notions of fair play and substantial

20  justice." *Impossible Foods*, 80 F.4th at 1086. Courts may have general or specific

21  jurisdiction over an entity depending on the nature and extent of that entity's contact

22  with the forum state. A court may exercise general jurisdiction over a corporation in a

23  state where the corporation is "at home," which is the case when its "affiliations . . . are

24  so 'continuous and systematic' as to render [it] essentially at home in the forum State."

25  *Daimler*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

26  564 U.S. 915, 919 (2011)). This is generally where the corporation is incorporated and

27  where it maintains its principal place of business. *Id.* Here, it is uncontested by

28  Plaintiffs that the Court lacks general jurisdiction over Defendant Noreen Hogan. (*See*

4

1    Opp'n at 10–12 (arguing only that the Court has specific jurisdiction over Defendant

2    Noreen Hogan).)

3         Where general jurisdiction is lacking, courts may have specific jurisdiction over

4    corporations if there is sufficient contact with the forum state and the claims arise out

5    of that contact.  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017)

6    ("[T]here must be 'an affiliation between the forum and the underlying controversy,

7    principally, [an] activity or an occurrence that takes place in the forum State and is

8    therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)).  In

9    the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the

10   defendant must either 'purposefully direct his activities' toward the forum or

11   'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2)

12   'the claim must be one which arises out of or relates to the defendant's forum-related

13   activities'; and (3) 'the exercise of jurisdiction must comport with fair play and

14   substantial justice, i.e. it must be reasonable.'"  *Axiom Foods, Inc. v. Acerchem Int'l,*

15   *Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*,

16   303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the

17   first two prongs of the test" while the burden of the third prong shifts to the

18   defendant.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

19   2004).

20             **1.  Purposeful Availment**

21        While the first prong of the specific jurisdiction test is often called the

22   "purposeful availment" prong, courts situationally apply either a purposeful availment

23   or purposeful direction analysis.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

24   *L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).  The question of whether to

25   apply a purposeful direction or purposeful availment analysis "turns on the nature of

26   the underlying claims."  *Impossible Foods*, 80 F.4th at 1088 (citing *Ayla, LLC v. Alya*

27   *Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)).  While there is no "rigid dividing line

28   between purposeful availment and purposeful direction[,]" purposeful direction is

5

1  generally preferred when analyzing tort claims as these claims typically involve fact

2  patterns where "a defendant's conduct primarily occurs outside the forum state." *Id.*

3  at 1088–89.

4       "To have purposefully availed itself of the privilege of doing business in the

5  forum, a defendant must have performed some type of affirmative conduct which

6  allows or promotes the transaction of business within the forum state." *Boschetto v.*

7  *Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and internal quotations

8  removed). "A showing that a defendant purposefully availed himself of the privilege

9  of doing business in a forum state typically consists of evidence of the defendant's

10  actions in the forum, such as executing or performing a contract there."

11  *Schwarzenegger*, 374 F.3d at 802. Likewise, purposeful direction involves intentional

12  contact with the forum state. It is "the defendant's contacts with the forum State itself,

13  not the defendant's contacts with persons who reside there" that are relevant to the

14  inquiry. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The defendant's mere knowledge

15  that the plaintiff resides in the forum state "will not, on its own, support the exercise of

16  specific jurisdiction." *Axiom Foods*, 874 F.3d at 1070. However, "a defendant's

17  contacts with the forum State may be intertwined with his transactions or interactions

18  with the plaintiff . . . ." *Walden*, 571 U.S. at 286. Only purposeful contacts, and not

19  random, fortuitous, or attenuated contacts will give rise to personal jurisdiction. *Id.*

20       **2. Relation of Claim to Forum Activities**

21       The claims brought by the plaintiff must arise out of or relate to the defendant's

22  contacts with the forum in order for the court to exercise jurisdiction. *Ford Motor Co.*

23  *v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021). However, a strict causal

24  relationship is not required to satisfy the relation prong. *Id.* Rather, there need only

25  be a "connection" between the forum-related activity and the injury claimed. *Id.* The

26  Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise out

27  of the defendant's forum-related activities. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th

28  Cir. 2007).

### 3. **Reasonableness**

The final prong of the personal jurisdiction analysis examines whether the court exercising jurisdiction would be reasonable. *Menken*, 503 F.3d at 1058. This determination requires consideration of seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.*

## II.    **Analysis**

The parties agree that given the nature of Plaintiffs' claims, the purposeful direction analysis used in the Ninth Circuit is appropriate. The purposeful direction analysis involves applying the *Calder* "effects" test which imposes three requirements, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803).

As presently pled, the First Amended Complaint ("FAC") fails to satisfy the first stage of this analysis. Plaintiffs' allegations against Defendant Noreen Hogan are exceedingly limited. The FAC alleges only that Defendant Noreen Hogan is the daughter of Defendant Patrick Hogan and that she has been President of CMB Regional Centers since 2017. (FAC ¶¶ 16, 19.) In their Opposition, Plaintiffs assert they alleged an intentional act by Defendant Noreen Hogan when Plaintiff Lin was sent the Project Overview Document. (*See* Opp'n at 11 (citing FAC ¶¶ 45–47.).) But the portion of the FAC cited by Plaintiffs does not allege that Defendant Noreen Hogan sent the Project Overview Document and contains no direct or implicit reference to Defendant Noreen Hogan at all. Instead, it simply states that Plaintiffs were sent a

1  CMB brochure by "Jessica Zhou, a CMB Regional Center employee," along with

2  information about the brochure and later communications between Plaintiffs and

3  Zhou.  (FAC ¶¶ 45-47.)  Plaintiffs' Opposition also attempts to rely on the allegation in

4  paragraph 19 of the FAC that Defendant Noreen Hogan "manages the day-to-day

5  operations of the Company as well as implementing strategic initiatives for CMB."

6  (Opp'n at 11.)  However, such general allegations of Defendant Noreen Hogan's

7  connection to corporate defendants without any actions attributed to Defendant

8  Noreen Hogan cannot form the basis of personal jurisdiction.  *Davis v. Metro Prods.,*

9  *Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a

10  corporation that causes injury in the forum state is not sufficient in itself to permit that

11  forum to assert jurisdiction over the person.").

12      There are no facts alleged within the FAC that attribute any intentional action to

13  Defendant Noreen Hogan.  As such, the FAC fails to allege sufficient facts to satisfy the

14  *Calder* effects test and establish this Court's personal jurisdiction over Defendant

15  Noreen Hogan.  Defendants' Motion to Dismiss will thus be granted as to Defendant

16  Noreen Hogan, though leave to amend will be granted.[3]

17                    **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

18      **I.    Legal Standard**

19      A party may move to dismiss for "failure to state a claim upon which relief can

20  be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint

21  lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

22  theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

23  The court assumes all factual allegations are true and construes "them in the light

24  most favorable to the nonmoving party."  *Steinle v. City & County of San Francisco*, 919

25  F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's allegations do not

26  _____

27  [3] While the Court dismisses all claims against Defendant Noreen Hogan for lack of personal jurisdiction, the Court addresses below some of the dismissed claims against Defendant Noreen Hogan, but only where it might help the parties narrow the issues in this case for subsequent amendment and motion

28  practice.

1   "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v.*
2   *Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain
3   statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.
4   8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
5   (2007).  However, this rule demands more than unadorned accusations; "sufficient
6   factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the
7   same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.*  "A
8   claim has facial plausibility when the plaintiff pleads factual content that allows the
9   court to draw the reasonable inference that the defendant is liable for the misconduct
10  alleged."  *Id.*

11  **II.    Analysis**

12  **A.  Choice of Law**

13          As an initial matter, the parties disagree over whether Delaware or California
14  law properly applies to this action.  As this case was removed to federal court on the
15  basis of diversity jurisdiction, the Court applies the choice of law rules of the forum
16  state.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).   California
17  employs different choice of law tests depending on whether there is a contractual
18  choice of law provision that applies to the claims.  The *Nedlloyd* test applies when
19  there is a contractual choice of law and the claim falls within the scope of that
20  agreement, whereas the "governmental interest" test applies where there is no choice
21  of law provision encompassing the claim, but one party asserts a different state's law is
22  nevertheless applicable.  *Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 919
23  (2001).

24          Under the governmental interest test, first, the court must determine whether
25  the foreign law "materially differs" from the forum law; next the court must determine
26  whether the foreign state has an interest in applying its law; and finally, only if the first
27  two steps are satisfied, the court must "select the law of the state whose interests
28  would be 'more impaired' if its law were not applied."  *Id.* at 920.  By comparison,

9

1    where a claim falls within a choice of law provision, the court applies the *Nedlloyd*

2    approach which adopts the view of the Second Restatement of Conflict of Laws

3    § 187(2).  *Id.* at 916.  Under that measure, "the court must first determine: (1) whether

4    the chosen state has a substantial relationship to the parties or their transaction, or (2)

5    whether there is any other reasonable basis for the parties' choice of law."  *Id.*

6    (cleaned up).  If either of these tests are met, "the court must next determine whether

7    the chosen state's law is contrary to a *fundamental* policy of California.  If there is no

8    such conflict, the court shall enforce the parties' choice of law.  If, however, there is a

9    fundamental conflict with California law, the court must then determine whether

10    California has a materially greater interest than the chosen state in the determination

11    of the particular issue."  *Id.* (cleaned up).

12          Here, there is a contractual choice of law provision contained within the LPA

13    which requires that "laws of the State of Delaware now or hereafter in effect, . . . shall

14    be used to construe and govern this Agreement. "  (LPA (FAC, Ex. G) at 3.)  However,

15    simply because there is a choice of law provision within the LPA does not mean that it

16    covers each claim.  While both parties seem to argue for the universal application of

17    California or Delaware state law to the entire FAC, the appropriate law to apply must

18    be determined on a claim by claim both based on whether the choice of law provision

19    within the LPA applies to that claim and which state's law applies to the specific cause

20    of action at issue.  *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir.

21    2001) ("the three-part California choice of law inquiry requires comparison of each

22    non-forum state's law and interest with California's law and interest *separately*."

23    (citations omitted)).

24          **B.  Claims against Noreen Hogan, Patrick Hogan, and Group 48**

25          Defendants first argue that Plaintiffs have generally failed to adequately allege

26    any claims against Noreen Hogan, Patrick Hogan, or Group 48 due to a failure to

27    allege how they were involved in the course of conduct giving rise to this dispute.

28    Looking at the FAC, Defendants are correct that the FAC lacks any factual allegations

1    regarding Defendant Noreen Hogan's involvement in any of the claims at issue.  (*See*

2    *supra* Motion to Dismiss for Lack of Personal Jurisdiction section II.)  As such, the

3    claims against Defendant Noreen Hogan must be dismissed.

4    　　　　As to Defendant Patrick Hogan, the FAC alleges that Defendants CMB Regional

5    Centers, NK Immigration Services, and CMB Export act as alter egos for Defendant

6    Patrick Hogan, thus making him liable for the acts of those alleged alter egos.  (*See*

7    FAC ¶¶ 25–26.)  However, while the Court takes as true Plaintiffs' allegations at this

8    stage, the FAC only includes bare assertions that these Defendants are alter egos of

9    one another.  The FAC does not meaningfully address any of the elements necessary

10   to establish liability under an alter ego theory and does not include factual allegations

11   to support such a theory of liability.  *See Xyience Beverage Co. v. Statewide Beverage*

12   *Co.*, No. 15-cv-02513-MMM, 2015 WL 13333486, at *8 (C.D. Cal. Sep. 24, 2015)

13   (dismissing claims where the plaintiff failed to allege sufficient facts to establish alter

14   ego liability).  Accordingly, Plaintiffs' claims against Defendant Hogan under an alter

15   ego theory must also be dismissed for failure to state a claim on this theory of liability.

16   　　　　In their Opposition, Plaintiffs contend that independent of an alter ego theory,

17   Defendant Patrick Hogan is also liable based on his "personal participation in

18   wrongful acts" (Opp'n at 15–16), and Plaintiffs do include some allegations in the FAC

19   about Defendant Patrick Hogan's personal conduct.  Specifically, Plaintiffs allege that

20   Defendant Patrick Hogan was responsible for an early marketing email sent to one of

21   the Plaintiffs (FAC ¶ 48) and that he wrote updates to the limited partners that

22   contained misleading information (*id.* ¶¶ 65–69, 71, 73–74, 77).  While it is not fully

23   clear how each of these allegations fits within each of Plaintiffs' claims, the Court will

24   address allegations against Defendant Patrick Hogan in the discussion of the

25   adequacy of specific claims.  However, as to Defendants' argument that the FAC

26   generally fails to allege facts regarding Defendant Patrick Hogan's individual liability,

27   the Motion to Dismiss is denied on this basis.

28   ////

1    Finally, while Plaintiffs' allegations certainly concern the events around Group

2    48, Plaintiffs have not alleged that Group 48 itself participated in any misconduct

3    giving rise to liability.  Plaintiffs argue that Group 48 is also an alter ego but the FAC

4    lacks any factual allegations to this effect.  Unlike as to Defendants Patrick Hogan,

5    CMB Export, CMB Regional Centers, and NK Immigration Services, Plaintiffs do not

6    even allege in conclusory fashion that Group 48 is an alter ego of these parties.  (*See*

7    FAC ¶¶ 25–26.)  Given the lack of any factual allegations supporting an alter ego

8    theory of liability against Group 48 or establishing actions by Group 48 individually,

9    Plaintiffs' claims against Defendant Group 48 must be dismissed with leave to amend.

10    **C.  Fraudulent Inducement**

11    Plaintiffs allege that Defendants induced them to invest in Group 48 through

12    fraudulent representations in marketing material about "Defendants' skill and record

13    of success, as well as the safety of the investment" as well as "the facts about the

14    construction loan."  (FAC ¶ 96.)  Regardless of whether California or Delaware law

15    applies, a three-year statute of limitations applies to claims of fraudulent inducement.

16    Cal. Civ. Proc. Code section 338(d); *see Kline v. Turner*, 87 Cal. App. 4th 1369, 1373

17    (2001); *see* 10 Del. C. § 8106.  Plaintiffs signed the LPA in 2015, meaning this period

18    had run well in advance of Plaintiffs filing the present action.  Plaintiffs argue in their

19    Opposition that the discovery rule should apply to delay accrual as they did not

20    discover a cause of action ". . . until February 2023 at the earliest when the Loan

21    Agreement and its terms were first disclosed as an exhibit . . ." in a state court action.

22    (Opp'n at 20.)  However, the FAC lacks any allegations concerning delayed discovery

23    whether through disclosure of the Loan Agreement or otherwise.

24    A plaintiff must allege facts that support that a complaint is timely filed.  *See*

25    *Chestra v. Davis*, 747 Fed. Appx. 626, 627 (9th Cir. 2019) (citing *Gregg*, 870 F.3d at

26    887).  The Court cannot look beyond the FAC for assurance that it was timely filed or

27    that the discovery rule applies.  As presently pled, the FAC does not contain any

28    information sufficient to establish that these claims are timely through application of

1  the discovery rule.  As such, Plaintiffs' fraudulent inducement claims are dismissed as

2  untimely, though Plaintiffs will be granted leave to amend.

3      This same reasoning also applies to Plaintiffs' tenth cause of action of "recission

4  for fraudulent misrepresentation."  As alleged, the basis of this claim is identical to

5  Plaintiffs' fraudulent misrepresentation claim.  (FAC ¶¶ 92–99, 153–156.)  As such, this

6  claim is also dismissed on the same grounds, with leave to amend.

7      **D. Negligence and Gross Negligence**

8          **1. Delaware Law Applies to Allegations that Defendants Mismanaged**

9              **the Limited Partnership**

10      Plaintiffs' negligence and gross negligence claims concern Defendants' alleged

11  false and misleading statements to Plaintiffs as well as Defendants' alleged failures to

12  adequately discharge their duties to protect Group 48's investment in the Project.

13  Most of these allegations fall under the scope of the LPA and its choice of law

14  provision as they address Defendants' management of the limited partnership.  The

15  parties are reasonably connected to Delaware given Group 48 is a Delaware limited

16  partnership, thus the choice of Delaware law is reasonable.  Plaintiffs have not

17  established that Delaware negligence law is contrary to fundamental California policy

18  and the Court is unaware of any reason that it would be contrary.  Accordingly, for the

19  claims concerning Defendants' alleged negligence and gross negligence in the

20  management of Group 48, Delaware law applies to these claims.

21      These claims are barred under Delaware law by the economic loss doctrine.

22  The economic loss doctrine prohibits recovery in tort for a harm that is solely

23  economic.  *Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp. 2d

24  519, 526 (D. Del. 2012).  While the economic loss rule finds its origins in product

25  liability, it applies to all cases and requires that a plaintiff "sue in contract and not in

26  tort where an action is based entirely on a breach of the terms of a contract between

27  the parties and not on a violation of an independent duty imposed by law."  *Israel*

28  *Discount Bank of New York v. First State Depository Co., LLC*, No. 7237-VCP, 2012 WL

1   4459802, at *14 (Del. Ch. Sept. 27, 2012) (internal citations and quotation marks

2   omitted).

3        This rule applies here to bar Plaintiffs from bringing claims of negligence or

4   gross negligence based on Defendants' performance of their duties as these claims

5   allege the same breach of duty as those brought under breach of contract.  Plaintiffs

6   are correct that the economic loss doctrine would not bar Plaintiffs' negligence claims

7   related to the inducement of the contract as this concerns a breach of duty separate

8   from the contract.  *See R. Keating & Sons, Inc. v. Chiselcreek Dev., LLC*, No. CV N17C-

9   05-195 VLM, 2020 WL 6390676, at *4 (Del. Super. Ct. Oct. 30, 2020).  But this does not

10  save Plaintiffs' claims that Defendants did not make truthful disclosures as general

11  partners, "fail[ed] to properly manage, control, administer and operate the business of

12  the partnership[,]" ignored their duties as general partner, or similar claims predicated

13  on Defendants' performance of their duties under the LPA.  (FAC ¶¶ 134, 136, 142.)

14       Accordingly, these claims must be dismissed.  As the economic loss doctrine

15  presents a clear bar to these claims, they are dismissed without leave to amend.

16                   **2.  Plaintiffs' Inducement-Based Claims are Untimely**

17       Plaintiffs' remaining negligence and gross negligence claims concerning

18  Defendants' alleged inducement of Plaintiffs' investment are barred as untimely on the

19  same basis as Plaintiffs' fraudulent inducement claims above.  (*See supra* Motion to

20  Dismiss for Failure to State a Claim section II.C.)  Regardless of whether California or

21  Delaware law applies, negligent misrepresentation claims are subject to, at most, the

22  same three-year statute of limitations as fraudulent inducement claims.  *See* 10 Del.

23  C. § 8106; *see also Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006) ("the

24  applicable statute of limitations is 10 Del. C. § 8106, which imposes a three-year

25  period for claims of negligent misrepresentation"); *see also Ventura Cnty. Nat. Bank v.*

26  *Macker*, 49 Cal. App. 4th 1528, 1531 (1996) (applying a two or three-year state of

27  limitations dependent on whether a negligent misrepresentation claim more closely

28  resembled fraud or negligence).  As Plaintiffs' investment occurred in 2015, Plaintiffs'

1  failure to allege sufficient facts to support application of the discovery rule discussed

2  above is similarly fatal to Plaintiffs' negligence and gross negligence claims related to

3  the inducement of Plaintiffs' investment.  As such, these claims will be dismissed with

4  leave to amend.

5  　　　　**E.  Breach of Fiduciary Duty**

6  　　　　　　**1.  Delaware Law Applies**

7  　　　　The alleged breach of fiduciary duties of the limited partnership's general

8  partners plainly falls within the scope of the LPA and its choice of law provision

9  applies.  Thus, the Court applies the *Nedlloyd* analysis.  As noted previously, the

10  parties have good reason to select Delaware law and Delaware law on breach of

11  fiduciary duty does not violate California's fundamental policy interests.  *See Kaul v.*

12  *Mentor Graphics Corp.*, 730 Fed. Appx. 437, 439 (2018) ("The choice of Delaware law

13  also does not violate a fundamental California public policy, even though Delaware

14  law would not allow Plaintiffs' fiduciary duty claim.").  As such, Delaware law properly

15  applies to these claims.

16  　　　　　　**2.  Non-parties**

17  　　　　Defendants correctly identify that Plaintiffs' breach of fiduciary duty claims are

18  only presently viable against the general partners.  The presence of the LPA creates

19  fiduciary duties for the general partners to the limited partnership and the limited

20  partners. *JER Hudson GP XXI LLC v. DLE Investors, LP*, 274 A.3d 755, 783–84 (Del. Ch.

21  2022); (*see* FAC ¶ 113–14 (claiming that under the LPA the general partners owed

22  Plaintiffs fiduciary duties).)  However, non-parties to a contract do not bear its

23  contractual liabilities, including the fiduciary duties it creates.  *Gelfman v. Weeden*

24  *Invs., LP*, 792 A.2d 977, 992 n.24 (Del. Ch. 2001).  Thus, the limited partnership, Group

25  48, itself does not owe Plaintiffs fiduciary duties under the LPA as Group 48 is a

26  product of that agreement, not a party to it.  Defendants Noreen and Patrick Hogan

27  could, in theory, be liable for breach of fiduciary duty if they were directors of the

28  general partners.  *See Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,

1   752 A.2d 1175, 1180–82 (Del. Ch. 1999). But such claims require allegations that

2   establish that they "acted in a way that is potentially advantageous to their personal

3   interests and at the expense of the limited partners . . ." and caused the general

4   partner to breach its fiduciary duty. *Gelfman*, 792 A.2d at 992 n.24. No such

5   allegations are presently contained in the FAC. As a result, Plaintiffs' breach of

6   fiduciary duty claims must be dismissed except as to the general partners, Defendants

7   CMB Export and NK. Leave to amend is granted as to Defendants Noreen and Patrick

8   Hogan, but not as to Group 48.

9   **3.  LPA Does Not Bar Plaintiffs' Breach of Fiduciary Duty Claim**

10          Under Delaware law, Limited Partnership Agreements may disclaim "virtually all

11  duties" with the exception of the covenant of good faith and fair dealing. *Cohn v.*

12  *SunCoke Energy Partners, L.P.*, 2021 WL 3877885, *4 (3rd Cir. Aug. 31, 2021) (citing

13  *Brinckerhoff v. Enbridge Energy Co.*, 159 A.3d 242, 252 (Del. 2017), *as revised* (Mar.

14  28, 2017)). The LPA in the present action disclaims all liability for the general partner

15  "to the fullest extent under Applicable Law" and expressly includes "any breach of

16  duties (including fiduciary duties)[.]" (LPA at 50.) As such, the LPA effectively bars any

17  fiduciary duty claims against the general partner.

18          However, the LPA disclaimer of liability applies "unless the loss or damage shall

19  have been the result of the General Partner's material breach of this Agreement

20  causing a Material Adverse Effect to the Partnership, gross negligence, or willful or

21  wanton misconduct." (LPA at 30.) In the FAC, Plaintiffs allege that Defendants were

22  grossly negligent in the discharge of their duties as general partners. (FAC ¶ 142.)

23  This places Plaintiffs' claims in the exception of the LPA's disclaimer of liability and

24  thus, as alleged, these claims are not barred by that disclaimer.

25      **4.  Timeliness**

26          Defendants also contend that "large swaths" of Plaintiffs' fiduciary duty claim

27  are time-barred by Delaware's three-year statute of limitations for such claims. (Mot.

28  at 28.) There are portions of the claim that clearly fall outside the statute of limitations

1  period absent application of the discovery rule which is presently unsupported by the

2  allegations in the FAC.  (*See supra* Motion to Dismiss for Failure to State a Claim

3  section II.C.)  Specifically, events preceding the LPA (*see* FAC ¶ 115.a-b) and

4  concerning misrepresentations of the construction loan in the LPA (*id.* ¶ 115.c) are

5  events that occurred in 2015 and are thus untimely.

6        Other breaches that are alleged may be at least partially timely but are

7  presently vaguely alleged such that it is impossible to determine if they are timely.  (*Id.*

8  ¶ 115.d-e, g.)  For example, Plaintiffs allege that Defendants breached their fiduciary

9  duty by "failing to ensure that capital was not wasted by the Developer by failing to

10  monitor the project's progress and annual budgets[.]" (*Id.* ¶ 115.e.)  The FAC contains

11  numerous allegations of Defendants' misconduct, including that they failed to

12  adequately monitor the progress of the Project.  (*Id.* ¶¶ 7, 78.)  But these are general

13  allegations not clearly tied to any of the allegations in Plaintiffs' breach of fiduciary

14  duty claim.  It is thus impossible to determine if these claims are timely as currently

15  pled.[4]

16        The one exception is the allegation that Defendants breached their fiduciary

17  duty by "failing to declare default on the Group 48 loan or take other remedial action

18  when the Developer breached the loan agreement." (*Id.* ¶ 115.f.)  This seemingly

19  references Defendants' response to the default of the Project on July 9, 2021.  (*Id.*

20  ¶ 76.)  This alleged breach falls within the three-year statute of limitations for breach of

21  fiduciary duty claims without the need to invoke the discovery rule.

22        Accordingly, Plaintiffs' breach of fiduciary duty claims against the general

23  partners as presently pled must be dismissed as untimely, with the exception of

24  Plaintiffs' claim that the general partners breached their duty by failing to take

25  remedial action in response to the breach of the loan agreement.  Plaintiffs are

26  *////*

27  ───────────────────

28  [4] Again, Plaintiffs have not pled sufficient facts to support an invocation of the discovery rule.  (*See supra* Motion to Dismiss for Failure to State a Claim section II.C.)

1    granted leave to amend their other breach of fiduciary duty claims against the general

2    partners of Group 48.

3        **F. Breach of Contract**

4          **1. Delaware Law Applies**

5        Plaintiffs alleged that Defendants breached their duties under the LPA "by

6    taking on the job of general partner without the experience and skill necessary to

7    handle the project, taking on the role of general partner in dozens of other

8    partnerships that they were not equipped to manage, and failing to monitor the affairs

9    of the Partnership so as to prevent it from becoming insolvent." (FAC ¶ 109.)

10    Plaintiffs' breach of contract claim naturally falls within the scope of the LPA and its

11    choice of law provision given it concerns an alleged breach of the LPA's terms. As

12    already discussed, the parties have good reason to apply Delaware law as that is the

13    state of incorporation for the limited partnership. Plaintiffs have not identified that

14    Delaware state law conflicts with any fundamental policy of the State of California with

15    regard to Plaintiffs' breach of contract claims. Accordingly, the LPA's choice of law

16    provision applies under the *Nedlloyd* analysis and Delaware law is applicable to these

17    claims.

18          **2. Non-Parties to the LPA**

19        Defendants argue for dismissal of non-parties to the LPA on the basis that only

20    a party to a contract may be sued for breach of that contract. (Mot. at 29–30.) Plaintiffs

21    correctly note that they have sought to allege that other non-party Defendants are

22    alter egos of the party Defendants. However, as discussed above, Plaintiffs have not

23    presently adequately alleged their alter ego claims. (*See supra* Motion to Dismiss for

24    Failure to State a Claim section II.B.) Thus, while it may be possible for Plaintiffs to

25    state breach of contract claims against non-parties to the LPA under an alter ego

26    theory, the FAC is presently inadequately pled to support this. Accordingly, claims

27    against non-parties to the LPA (*i.e.*, all parties except Defendants CMB Export and NK)

28    for breach of contract are dismissed with leave to amend.

### 3. Waiver of Breach of Contract Claims

Defendants also argue that Plaintiffs waived their breach of contract claims in prior state court proceedings. (Mot. at 30.) However, this argument seems to misconstrue a prior statement by Plaintiffs which conceded only that Plaintiffs were unable to state a breach of contract claim against Group 48 as it was not a party to the LPA. The full statement cited by Defendants is "Defendants claim that, among other things, because Defendant Group 48 is not a party to the LPA, so Plaintiffs cannot allege breach of contract. Plaintiffs agree . . . ." (ECF No. 35-1, Ex. 2 at 8; Opp'n at 29.) This statement does not seem to be a waiver of any breach of contract claim, nor is it even clear that it is a waiver of any breach of contract claim of Group 48 based on an alter ego theory. As such, Defendants' Motion to dismiss Plaintiffs' breach of contract claims on this basis is denied.

### 4. Sufficiency of Breach of Contract Allegations

Plaintiffs have not sufficiently alleged their breach of contract claims. In their Motion, Defendants contend that these claims are insufficiently alleged as Plaintiffs failed to identify specific provisions of the contract allegedly breached by Defendants. Plaintiffs are correct that it is not necessary for them to identify the exact section or subject headings of the contract that they claim Defendants breached. *See Ryan v. Buckeye Partners, L.P.*, No. CV 2021-0432-JRS, 2022 WL 389827, at *6 n.60 (Del. Ch. Feb. 9, 2022). However, the FAC must still clearly reference the portions of the LPA that they claim Defendants breached. *Id.*

The FAC presently states that "the General Partners had duties under the contract which included the responsibility to manage the business affairs of Group 48," that the general partners had the exclusive power and authority to manage the affairs of the partnership, and that the general partners agreed to perform its duties in good faith. (FAC ¶¶ 107–08.) While the contractual duties identified in Paragraph 108 of the FAC are clearly connected to Article VI, Section G of the LPA, the contractual duties alleged in Paragraph 107 do not clearly reference any particular

19

1    portion of the LPA.  As a result, it is unclear which contractual provisions are being

2    breached by the acts alleged in Paragraph 109.  Thus, Plaintiffs have failed to

3    adequately allege and put Defendants on notice as to what provisions of the LPA were

4    breached and in what manner.

5         Given the lack of clarity in Plaintiffs' breach of contract allegations, the Court

6    dismisses these allegations with leave to amend to allow Plaintiffs to state with more

7    particularity which provisions of the contract form the breach of contract claim and

8    how those provisions were breached.

9    **G.  Breach of Implied Covenant of Good Faith and Fair Dealing**

10        **1.  Delaware Law Applies**

11        Both California and Delaware recognize an implied covenant of good faith and

12   fair dealing contained in every contract.  *See San Jose Prod. Credit Ass'n v. Old*

13   *Republic Life Ins.*, 723 F.2d 700, 703 (9th Cir. 1984); *Anderson v. Wachovia Mortg.*

14   *Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007).  As such, the breach of this covenant is

15   covered by the LPA and its choice of law provision.  Applying *Nedlloyd*, the parties

16   have good reason to select Delaware law (*see supra* Motion to Dismiss for Failure to

17   State a Claim section II.D.1), and Delaware law on the implied covenant of good faith

18   and fair dealing is not contrary to California policy, *see Oracle Corp. v. ORG Structure*

19   *Innovations LLC*, No: 11-cv-3549-SBA, 2012 WL 12951187, at *7 (N.D. Cal. Mar. 30,

20   2012).  Thus, Delaware law applies to Plaintiffs' breach of the implied covenant of

21   good faith and fair dealing claim.

22        **2.  Application of the Covenant**

23        Plaintiffs have not alleged sufficient facts to justify invocation of the covenant of

24   good faith and fair dealing.  "Under Delaware law, the implied covenant of good faith

25   and fair dealing exists in every contract."  *Fundingsland v. OMH Healthedge Holdings,*

26   *Inc.*, 329 F. Supp. 3d 1123, 1137 (S.D. Cal. 2018) (citing *Dieckman v. Regency GP LP*,

27   155 A.3d 358, 367 (Del. 2017)).  "The covenant is best understood as a way of

28   implying terms in the agreement, whether employed to analyze unanticipated

1    developments or to fill gaps in the contract's provisions." *Dunlap v. State Farm Fire*

2    *and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (cleaned up).  The covenant cannot be

3    used to state a claim based on conduct authorized or otherwise handled by the

4    contract, and a plaintiff seeking to invoke it must identify the specific implied

5    contractual obligation that is not within the terms of the agreement.  *Id.* at 441–42; *see*

6    *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 527 (D. Del. 2013).  "[T]he elements of an

7    implied covenant claim are those of a breach of contract claim: a specific implied

8    contractual obligation, a breach of that obligation by the defendant, and resulting

9    damage to the plaintiff." *Fundingsland*, 329 F. Supp. 3d at 1137 (cleaned up).

10        Here, Plaintiffs' breach of the implied covenant of good faith and fair dealing

11    claim lacks the necessary allegations to support such a cause of action.  Plaintiffs

12    argue that their covenant claim is based on allegations that the Defendants executed

13    their duties in bad faith, including affirmatively lying and misleading the Plaintiffs.

14    (Opp'n at 30–31.)  However, the allegations within the FAC fail to establish that such

15    claims are not covered by the LPA.  (*See* FAC ¶¶ 116–25.)  The application of the

16    implied covenant of good faith and fair dealing is a "cautious enterprise" under

17    Delaware law and courts are particular in ensuring that its invocation is necessary.

18    *Kyle*, 987 F. Supp. 2d at 527.  The covenant can only be invoked where the conduct in

19    question is not addressed by the contract.  *Dunlap*, 878 A.2d at 441.  Given the

20    Plaintiffs' failure to allege sufficient facts in the FAC to establish that invocation of the

21    covenant is necessary, Defendants' Motion to Dismiss this claim will be granted, with

22    Plaintiffs being granted leave to amend.

23        **H. Unjust Enrichment**

24        Under both California and Delaware law, unjust enrichment is commonly

25    applied as a quasi-contract claim that can serve in lieu of an express enforceable

26    contract.  *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008); *Echo*

27    *& Rig Sacramento, LLC v. AmGuard Ins.*, 698 F. Supp. 3d 1210, 1218 (E.D. Cal. 2023).

28    In both California and Delaware courts, even where a contract exists a claim of unjust

1    enrichment can still be brought where the contract was procured by fraud.  *Echo & Rig*

2    *Sacramento, LLC*, 698 F. Supp. 3d at 1219; *Chumash Cap. Inv., LLC v. Grand Mesa*

3    *Partners, LLC*, No. N23C-07-209 SKR CCLD, 2024 WL 1554184, at *16 (Del. April 10,

4    2024).

5           While Plaintiffs' allegations related to unjust enrichment are extremely limited,

6    the FAC is clear that Plaintiffs believe that the LPA was the product of fraud by

7    Defendants.  (*See* FAC ¶¶ 95–99.)  Taken as true, Plaintiffs' factual allegations

8    supporting that the contract was the product of fraud are sufficient at this stage to

9    state an unjust enrichment claim in the alternative.  Accordingly, Defendants' Motion

10   to Dismiss is denied as to Plaintiffs' Unjust Enrichment claim.

11       **I.   UCL Claims**

12          **1.  UCL Claims Related to Defendants' Conduct Within the Limited**

13              **Partnership**

14          The bulk of Plaintiffs' theories of liability under the UCL concern Defendants'

15   conduct as general partners to the limited partnership.  (*See* FAC ¶ 101.b–i.)  The

16   Court's consideration of these UCL claims concerning Defendants' conduct within the

17   limited partnership begins and ends with the choice of law analysis.  These claims

18   expressly concern the adequacy of Defendants' conduct in relation to the limited

19   partnership and the LPA itself.  (*Id.*)  Thus, the choice of law provision in the LPA

20   applies and the Court applies the *Nedloyd* analysis.  As discussed above, the parties

21   had good reason to select Delaware state law as the law applicable to the LPA.

22          Courts have generally found that UCL itself does not represent a fundamental

23   policy of California.  *See Yiren Huang v. FutureWei Techs., Inc.*, No. 18-cv-00534-BLF,

24   2018 WL 10593813, at *7 (N.D. Cal. Sept. 24, 2018) (finding that the UCL does not

25   represent a fundamental California policy in part because it does not contain an anti-

26   waiver provision); *see also Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, 889 F. Supp.

27   2d 1198, 1217 n.15 (2012) (noting that "courts have held that application of a choice-

28   of-law provision that bars a UCL claim does not violate a fundamental California public

1  policy.").  Plaintiffs cite several cases in which courts did find that a fundamental policy

2  existed.  But the cited cases largely concern California's fundamental policy in favor of

3  class action relief and generally find that there is a fundamental policy to permit

4  plaintiffs "to recover minor amounts of money obtained in violation of the UCL" as a

5  class action remedy.  *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 564 (2005); *see Van*

6  *Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1361 (N.D. Cal. 2007) (finding there

7  is "there is a substantial risk that a California fundamental public policy <u>in favor of class</u>

8  <u>actions</u>" (emphasis added)); *see also Am. Online, Inc. v. Superior Ct.*, 90 Cal. App. 4th

9  1, 17–19 (2001).  Those cases represent a fundamentally different situation than here

10  given that Plaintiff is not presently "rel[ying] solely on the UCL to support his claims."

11  *Aral*, 134 Cal. App. 4th at 564.

12       Given the above, the Court finds that general application of the UCL does not

13  represent a fundamental California policy.  As such, Delaware law applies.  The UCL is

14  not a Delaware law and thus Plaintiffs cannot bring claims under the UCL based on

15  Defendants actions as general partners to the limited partnership.  As such, Plaintiffs'

16  UCL claims as to subparagraphs (b) through (i) of paragraph 101 must be dismissed.

17           **2.  UCL Claim Based on Inducement**

18       The sole remaining basis for Plaintiffs' UCL claims states that Defendants

19  violated the UCL by "making false and misleading statements about Defendants'

20  experience, skill and track record as an investor in limited partnerships and the safety

21  of investing in Group 48 which induced Plaintiffs to invest[.]"  (FAC ¶ 101.a.)  As this

22  concerns actions prior to the signing of the LPA, the LPA and its choice of law

23  provision do not apply here.  However, even if these claims may fall under California

24  law under the "governmental interest" test and are thus not barred as Plaintiffs' other

25  theories of UCL liability are, they would still fail for the same reason as Plaintiffs' other

26  inducement-based claims: Plaintiffs have not presently alleged sufficient facts to

27  establish such claims are timely.

28  ////

1    Claims under California's UCL have a four-year statute of limitations. Cal. Bus. &

2    Prof. Code § 17208; *see Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013).

3    UCL claims are governed by common law accrual rules and thus accrue when the

4    harm is complete. *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016).

5    Given Plaintiffs signed the LPA in 2015, absent application of the discovery rule, which

6    applies to California UCL claims, Plaintiffs' claims are untimely even if California law

7    applies to those claims.  As discussed related to other claims above, Plaintiffs have not

8    alleged sufficient facts to apply the discovery rule.  Thus, Plaintiffs' remaining UCL

9    claims must presently be dismissed as untimely.

10    **CONCLUSION**

11    For the foregoing reasons, IT IS HEREBY ORDERED that:

12    1.  Defendants' Motion to Dismiss (ECF No.35) is GRANTED IN PART and

13        DENIED IN PART as follows:

14        a.  Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

15            over Defendant Noreen Hogan under Federal Rule of Civil

16            Procedure 12(b)(2) is GRANTED;

17        b.  Defendants' Motion to Dismiss for Failure to State a Claim under

18            Federal Rule 12(b)(6) is DENIED as to Plaintiffs' unjust enrichment

19            claim and claims against Defendant Patrick Hogan generally; and

20        c.  Defendants' Motion to Dismiss for Failure to State a Claim under

21            Federal Rule 12(b)(6) is GRANTED on all other bases as stated

22            above.

23    2.  Plaintiffs' First Amended Complaint is DISMISSED with leave to amend

24        except as to those claims identified above for which leave to amend was

25        expressly not granted. [5]

26

27    [5] Plaintiffs also brought "imposition of a constructive trust" as a cause of action but both parties seem in agreement that this is not a separate cause of action, but a form of relief Plaintiffs may seek.  (Opp'n at 36; Reply at 15.)  Accordingly, this will be dismissed as a separate cause of action without leave to amend.

28

1          3.  Plaintiffs shall file an amended complaint within thirty days of this order.

2

3          IT IS SO ORDERED.

4    Dated:   **March 28, 2025**

                                          Hon. Daniel J. Calabretta
5                                         UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15    DJC1 – fang24cv01618.mtd

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   25