Scott S. Humphreys (SBN 298021)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone: 424.204.4400
Facsimile: 424.204.4350
humphreyss@ballardspahr.com

Karla M. Vehrs (pro hac vice)
Kathryn E. Wendt (pro hac vice)
**BALLARD SPAHR LLP**
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
vehrsk@ballardspahr.com
wendtk@ballardspahr.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEN FANG, a California resident, and YU LIN, a California resident, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CMB EXPORT INFRASTRUCTURE INVESTMENT GROUP 48, LP, a Delaware limited partnership; CMB EXPORT LLC, a Texas limited liability company; NK IMMIGRATION SERVICES, LLC, a Texas limited liability company; PATRICK HOGAN, a Texas resident; and NOREEN HOGAN, a Texas resident, <br><br> Defendants. | Case No.: 2:24-cv-01618-DJC-DB <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> [Declaration of Patrick Hogan; Proposed Order] <br><br> <u>Hearing</u> <br> Date:        October 2, 2025 <br> Time:       1:30 p.m. <br> Courtroom:  7 <br> Judge:      Hon. Daniel J. Calabretta |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that, on October 2, 2025 at 1:30 p.m., or as soon thereafter as may be heard, before the Honorable Daniel J. Calabretta, in Courtroom 7 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, CA 95814, Defendants CMB Export Infrastructure Investment Group 48, LP, CMB Export LLC, NK Immigration Services, LLC, CMB Regional Centers, Patrick Hogan, and Noreen Hogan will and hereby do respectfully move the Court for an Order dismissing with prejudice this entire action and all claims asserted against them in Plaintiffs' Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying Declaration of Patrick Hogan, all other papers and files in this action, and such other or further evidence or argument that the Court may consider. A Proposed Order is filed herewith.

**Meet and Confer Certification**. Pursuant to this Court's Standing Order (Doc. 25), undersigned counsel certifies that counsel for the parties have engaged in, and exhausted, good faith pre-filing meet and confer efforts. Counsel have met and conferred on several occasions concerning this case generally and this motion in particular, including a telephone call on May 7, 2025.

Respectfully submitted:

DATED:  July 11, 2025

By:  */s/ Kathryn E. Wendt*
_____
Scott S. Humphreys
Karla M. Vehrs
Kathryn E. Wendt

Attorneys for Defendants

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................1

II.    BACKGROUND ................................................................................2

    A.    Incorporation of General Factual Background...........................2

    B.    The Group 48 Limited Partnership Agreement...........................2

    C.    Fang's Failed Efforts to Recover His Investment in Group 48.....................3

III.    ARGUMENT ....................................................................................5

    A.    This Court Lacks Personal Jurisdiction Over Noreen Hogan. ...............5

        1.    There is no purposeful direction or purposeful availment. .............6

        2.    The claims do not relate to any alleged forum activities. ..............6

        3.    The reasonableness prong is not satisfied. ...........................7

    B.    The SAC Names Improper Defendants.........................................8

    C.    Yu Lin Lacks Standing..............................................................9

    D.    All Causes of Action Must Be Dismissed Under Rule 12(b)(6).................9

        1.    Plaintiffs' fraudulent inducement claims fail. .......................10

            (a)    The fraudulent inducement claims are time-barred...........10

            (b)    The relation-back doctrine does not apply. ......................13

            (c)    The fraud claims contradict the contractual language.........14

            (d)    The remaining representations are not actionable. ............15

            (e)    The fraud claims are insufficiently pled. ...........................16

        2.    Plaintiffs' Gross Negligence Claim Is Untimely. ......................17

        3.    Plaintiffs' Fiduciary Duty Claim Is Barred..............................18

            (a)    Liability cannot extend beyond the General Partner. .........18

            (b)    Portions of this claim are time-barred ..............................19

        4.    Plaintiffs' Breach of Contract Claim Cannot Stand. ...................20

            (a)    The non-parties to the LPA are not liable...........................20

            (b)    The contract claim is insufficiently pled in the SAC.........22

        5.    Plaintiffs' Implied Covenant Claim Is Fatally Flawed. ................24

        6.    Plaintiffs' Unjust Enrichment Claim Fails. ..............................25

        7.    The California Unfair Competition Claim Is Time-Barred. .............26

        8.    Plaintiffs' Jury Demand Must Be Stricken.............................27

IV.    CONCLUSION ...............................................................................27

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) .......................................................... 6

*Appel v. Wolf*,
  No. 18-CV-814 L (BGS), 2019 U.S. Dist. LEXIS 13377, *11-12 (S.D.
  Cal. Jan. 25, 2019) ..................................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 9, 10

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017) ....................................................................................... 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ....................................................................................... 7

*Cilag GmbH Int'l v. Hospira Worldwide, LLC*,
  No. 22-589-RGA-SRF, 2022 U.S. Dist. LEXIS 220118 (D. Del. Dec. 6,
  2022) ...................................................................................................... 24, 25

*Clegg v. Cult Awareness Network*
  18 F.3d 752 (9th Cir. 1994) ........................................................................... 9

*Davis v. Metro Prods., Inc.*,
  885 F.2d 515 (9th Cir. 1989) ......................................................................... 6

*Dubose v. Wyndham Vacation Resorts, Inc.*,
  No. 20-1118-CFC, 2021 U.S. Dist. LEXIS 138475 (D. Del. July 26,
  2021) ................................................................................... 10, 11, 12, 13

*Echo & Rig Sacramento, LLC v. AmGuard Ins.*,
  698 F. Supp. 3d 1210 (E.D. Cal. 2023) ...................................................... 24

*Engelbrecht v. County of Placer*,
  No. 2:23-cv-00286-JAM-CKD, 2023 WL 6164030 (E.D. Cal. Sept. 21,
  2023) ............................................................................................................. 9

*In re Fruehauf Trailer Corp.*,
  No. 96-01563(PJW), 2011 WL 2838168 (D. Del. Bank. July 15, 2011) ...................... 15

*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
  No. 3:12-cv-03922-NC, 2012 WL 12925714 (N.D. Cal. Oct. 25, 2012) ...................... 10

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*GEA Sys. N. Am. LLC v. Golden State Foods Corp.*,
No. N18C-11-242 EMD CCLD, 2020 WL 3047207 (Del. Super. Ct. June
8, 2020) ............................................................................................................. 16

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) .......................................................................... 6

*Harrison v. Soroof Internat'l, Inc.*,
320 F. Supp. 3d 602 (D. Del. 2018).................................................................. 20

*Hellman v. Polaris Indus.*,
No. 2:21-cv-00949-JAM-DMC, 2022 U.S. Dist. LEXIS 28447 (E.D. Cal.
Feb. 15, 2022) .................................................................................................... 7

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
No. SA-CV-14-1645-DOC, 2015 U.S. Dist. LEXIS 191674 (C.D. Cal.
Jan. 22, 2015) .................................................................................................... 4

*Keystone Assocs. LLC v. Barclays Bank PLC*,
No. 19-796 (MN), 2020 WL 109008 (D. Del. Jan. 9, 2020) ........................... 15

*In re Lau Capital Funding*,
321 B.R. 287 (C.D. Cal. Bank. Feb. 15, 2005) ............................................... 13

*Lantz Ret. Invs. LLC v. Glover,*
No. 1:19-cv-00379-NONE-SAB, 2021 U.S. Dist. LEXIS 246213 (E.D.
Cal. Dec. 23, 2021) ........................................................................................... 15

*Lenci v. United States*,
No. 19-cv-06526-TSH, 2020 U.S. Dist. LEXIS 201071 (N.D. Cal. Oct.
28, 2020) ........................................................................................................ 7, 8

*Lutz v. Glendale Union High Sch.*,
403 F.3d 1061 (9th Cir. 2005) ......................................................................... 25

*MDNet, Inc. v. Pharmacia Corp.*,
147 Fed. App'x. 239 (3rd Cir. 2005) ............................................................... 15

*Mountjoy v. Bank of Am.*,
No. 2:15-cv-02204-TLN-AC, 2016 WL 4192416 (E.D. Cal. Aug. 9, 2016)............... 16

*Okura & Co. v. Careau Grp.*,
783 F. Supp. 482 (C.D. Cal. 1991)................................................................... 24

*Pac. Fisheries Corp. v. HIH Cas. & Gen. Ins., Ltd.*,
239 F.3d 1000 (9th Cir. 2001) ......................................................................... 25

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ......................................................................... 15

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Quiniones v. LG Chem, Ltd.*,
    No. 2:21-cv-01612-MCE-JDP, 2023 U.S. Dist. LEXIS 74605 (E.D. Cal.
    Apr. 27, 2023)...........................................................................................6

*Tae Youn Shim v. Lawler*,
    No. 17-cv-04920-EMC, 2019 U.S. Dist. LEXIS 113935 (N.D. Cal. July 9,
    2019)..........................................................................................................2

*Tolliver v. Christina Sch. Dist.*,
    564 F. Supp. 2d 312 (D. Del. 2008)...........................................................24

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008)..........................................8, 20, 21

*U.S. Immigr. Fund-NY LLC v. Mayorkas*,
    No. 21-0358 (CKK), 2022 U.S. Dist. LEXIS 42843 (D.D.C. Mar. 10,
    2022)......................................................................................................3, 4

*vMedex, Inc. v. TDS Operating, Inc.*,
    No. 18-1662 (MN), 2020 U.S. Dist. LEXIS 152059  (D. Del. Aug. 21,
    2020)........................................................................................................21

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ....................................................................5

*Yi v. Circle K Stores, Inc.*,
    258 F. Supp. 3d 1075 (C.D. Cal. 2017) ....................................................22

**State Cases**

*ABRY Partners V, L.P. v. F&W Acquisition LLC*,
    891 A.2d 1032 (Del. Ch. 2006)................................................................10

*Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*,
    963 A.2d 746 (Del. Ch. 2009)............................................................21, 22

*State ex rel. Brady v. Pettinaro Enters.*,
    870 A.2d 513 (Del. Ch. 2005)..................................................................10

*Carrow v. Arnold*,
    No. 182-K, 2006 Del. Ch. LEXIS 191 (Del. Ch. Oct. 31, 2006) .................13

*CitiMortgage, Inc. v. Bishop*,
    C.A. No. 09L-07-313 CLS, 2013 Del. Super. LEXIS 95 (Del. Super. Ct.
    Mar. 4, 2013)..............................................................................................9

*DG BF, LLC v. Ray*,
    C.A. No. 2020-0459-MTZ, 2021 Del. Ch. LEXIS 37 (Del. Ch. Mar. 1,
    2021)........................................................................................................15

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Dubroff v. Wren Holdings, LLC*,
   No. 3940-VCN, 2011 Del. Ch. LEXIS 164 (Del. Ch. Oct. 28, 2011) ........................... 18

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*,
   No. 2017-0500-JRS, 2018 Del. Ch. LEXIS 182 (Del. Ch. June 6, 2018) ................... 14

*Gelfman v. Weeden Invs., LP*,
   792 A.2d 977 (Del. Ch. 2001) .................................................................................... 17

*Gerdlund v. Elec. Dispenser Int'l*,
   190 Cal. App. 3d 263 (1987) ...................................................................................... 22

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
   C.A. No. 15754-NC, 1998 Del. Ch. LEXIS 226 (Del. Ch. Nov. 10, 1998) ................... 18

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
   817 A.2d 160 (Del. 2002) ........................................................................................... 19

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*,
   226 A.3d 727 (Del. 2020) ........................................................................................... 18

*Kline v. Turner*,
   87 Cal. App. 4th 1369 (2001) ..................................................................................... 12

*Krahmer v. Christie's Inc.*,
   903 A.2d 773 (Del. Ch. 2006) .................................................................................... 16

*LPPAS Representative, LLC v. ATH Holding Co., LLC*,
   No. 2020-0241, 2020 Del. Ch. LEXIS 372 (Del. Ch. Dec. 29, 2020) ........................... 13

*Luis v. Orcutt Town Water Co.*,
   204 Cal. App. 2d 433 (1962) ...................................................................................... 19

*Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
   854 A.2d 121, 150 (Del. Ch. 2004) ............................................................................ 15

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) .................................................................................. 22, 23

*Ryan v. Buckeye Partners, L.P.*,
   No. 2021-0432-JRS, 2022 Del. Ch. LEXIS 31 (Del. Ch. Feb. 9, 2022) .......... 21, 22, 24

*S'holder Reps. Servs. LLC v. Albertsons Cos.*,
   No. 2020-0710-JRS, 2021 Del. Ch. LEXIS 115 (Del. Ch. June 7, 2021) ................... 13

*Smith v. Donald L. Mattia, Inc.*,
   No. 4498-VCN, 2012 Del. Ch. LEXIS 8 (Del. Ch. Jan. 13, 2012) .............................. 12

*Solow v. Aspect Res., LLC*,
   No. 20397, 2004 Del. Ch. LEXIS 151 (Del. Ch. Oct. 19, 2004) ................................. 14

*Sprint Nextel Corp. v. iPCS, Inc.*,
  C.A. No. 3746-VCP, 2008 WL 2737409 (Del. Ch. July 14, 2008)................................20

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006)......................................................................14

*Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*,
  No. 2023-0699-JTL, 2024 Del. Ch. LEXIS 216 (Del. Ch. June 10, 2024)..................14

*Trusa v. Nepo*,
  No. 12071-VCMR, 2017 WL 1379594 (Del. Ch. Apr. 13, 2017) .................... 15, 16, 17

*Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*,
  C.A. No. 2019-0847-MTZ, 2022 Del. Ch. LEXIS 4 (Del. Ch. Jan. 4,
  2022) ..........................................................................................19

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007)........................................................................10

*Winklevoss Capital Fund, LLC v. Shaw*,
  No. 2018-0398-JRS, 2019 Del. Ch. LEXIS 75 (Del. Ch. Mar. 1, 2019) ................10

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
  No. 3088-VCP, 2008 Del. Ch. LEXIS 196 (Del. Ch. Dec. 23, 2008)..........................14

**Federal Statutes**

8 U.S.C. § 1153 ...........................................................................................1

**State Statutes**

10 Del. C. § 8106 .............................................................................. 12, 16, 22

Cal. Civ. Proc. Code § 338 ...........................................................................12

**Rules**

Fed. R. Civ. P. 8 ......................................................................................7, 23

Fed. R. Civ. P. 9 ................................................................................. 2, 15, 16

Fed. R. Civ. P. 12 ..................................................................................*passim*

Fed. R. Civ. P. 38 ........................................................................................25

**Regulations**

8 C.F.R. § 204.6(j)(3)...............................................................................2, 3

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**Other Authorities**

17A Am. Jur. 2d Contracts § 214 (2006) ......................................................... 13

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Over a decade ago, Plaintiff Chen Fang invested in the Delaware limited partnership CMB Export Infrastructure Investment Group 48, LP ("Group 48" or the "Partnership") and signed Group 48's Limited Partnership Agreement ("LPA"). He did so for purposes of obtaining an immigration benefit through the federal government's EB-5 immigrant investor program. *See* 8 U.S.C. § 1153(b)(5). The Partnership pooled Fang's investment with others and loaned money to a qualifying EB-5 project, so that Fang and the other Limited Partners of Group 48 could apply for EB-5 visas and become Lawful Permanent Residents ("LPR") in the United States.

Fang applied for an EB-5 visa based on the project, but before he received it, his wife, Yu Lin, obtained LPR status through the EB-1 priority workers program instead. *See* 8 U.S.C. § 1153(b)(1). That made Fang an eligible family-sponsored immigrant, so he no longer needed an EB-5 visa. *See* 8 U.S.C. § 1153(a)(2). Consequently, Fang and Lin—who is neither a signatory to the LPA nor a Limited Partner of Group 48—started this case as an individual action in Los Angeles Superior Court in August 2022 to rescind the LPA and recover Fang's investment in Group 48.

The Los Angeles Superior Court dismissed Plaintiffs' original Complaint in its entirety. Fang and Lin then obtained new counsel, who filed Plaintiffs' First Amended Complaint ("FAC") in March 2024. Therein, Fang and Lin attempted to transform their case into a putative class action against Group 48, its two co-General Partners (CMB Export LLC ("CMB Export") and NK Immigration Services, LLC ("NK Immigration")), and CMB Export's current Manager (Patrick Hogan) and President (Noreen Hogan).

On March 31, 2025, this Court also dismissed nearly all of Plaintiffs' claims. (Doc. 48). The Court granted Plaintiffs leave to amend their pleading again to establish the timeliness of their claims and to rectify other defects in the FAC. Plaintiffs therefore filed their Second Amended Complaint ("SAC") on April 28, 2025. (Doc. 50).

Despite the Court's thorough analysis and detailed direction, the SAC is still fatally

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

flawed. For starters, it does not establish personal jurisdiction over Ms. Hogan, so she must be dismissed from this action under Rule 12(b)(2). The SAC also does not put forth sufficient facts to invoke the discovery rule, so Plaintiffs' claims are time-barred. The claims also fail on the merits, as Plaintiffs have not pled their fantastical theories of fraud and self-dealing with even bare minimum plausibility, let alone the heightened particularity required by Rule 9(b). Further, Plaintiff Lin is neither a party to the LPA nor a Limited Partner of Group 48 and therefore lacks standing to bring any claims in this case. Defendants therefore ask the Court to dismiss Plaintiffs' claims for the third time—and to do so with prejudice and without another chance to amend.

## II.    BACKGROUND

### A.    Incorporation of General Factual Background.

Defendants described the history of this dispute in their first motion to dismiss. (Doc. 35 at ECF pp. 14-19). The Court issued a thorough Order on that motion evidencing its familiarity with the facts. (Doc. 48). Accordingly, the CMB Defendants will only summarize the background now and note new relevant points

### B.    The Group 48 Limited Partnership Agreement.

Fang and Lin are Chinese nationals who are now LPRs in the U.S. (SAC ¶¶ 12, 13). In 2015, Fang invested in Group 48 and became a Limited Partner. (SAC ¶ 61). He did so for the purpose of obtaining an immigration benefit through the EB-5 immigrant investor program. (*Id.* at ¶ 6). This program allows foreign nationals to apply for a green card if they make a qualifying investment into a U.S.-based project. *Tae Youn Shim v. Lawler*, No. 17-cv-04920-EMC, 2019 U.S. Dist. LEXIS 113935, *2-3 (N.D. Cal. July 9, 2019). For an investment to qualify under EB-5 law, the entire investment "must be 'at risk.'" *Id.* at *3 (quoting 8 C.F.R. § 204.6(j)(3)). "'[I]f the immigrant investor is guaranteed a return, or a rate of return on all or a portion of his or her capital,' the investment does not meet EB-5 requirements." *Id.* (quoting USCIS Policy Manual, Vol. 6, Part G, Ch. 2).

To invest in Group 48, Fang—but not Lin—reviewed and signed the LPA. (SAC ¶¶ 54, 61 and Ex. G). Fang and his fellow Group 48 Limited Partners certified throughout

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

the LPA that they were investing in Group 48 for immigration purposes only. (LPA § XVIII.E.1 on p. 53; LPA § XIX.A.1 on p. 55; LPA at p. 1). Because they were investing for purposes of the EB-5 program, Fang and the other Limited Partners understood and agreed that their investment in Group 48 was a "speculative investment" that involved "a substantial degree of risk" and was "fully at risk of total loss." (LPA § XIX.A.11 on p. 57; LPA § IV.C.1 on p. 17; LPA § V.D on p. 21; LPA § XIX.A.3.d on p. 55). Without this risk, the investment would not qualify for EB-5 purposes. *See* 8 C.F.R. § 204.6(j)(3).

Fang further certified in the LPA that he was investing in Group 48 solely for his "own account"—not anyone else's—and that it was his "own independent decision to make such investment." (LPA § XIX.A.1 on p. 55; LPA § XIX.A.8 on p. 56).

In the LPA, Fang further agreed that "the General Partner[1] shall not be responsible to any Partner as a result of a loss of his…investment in the Partnership." (LPA § VI.G.1 on p. 30). He also granted the General Partner wide discretion in running the Partnership and agreed that, to the maximum extent permitted by law, "the General Partner shall have full, exclusive, and complete discretion, power and authority, to manage, control, administer, and operate the business and affairs of the Partnership" and "to make all decisions affecting such business and affairs." (LPA § VI.A on pp. 24-25). This included the power to do "all things" the General Partner deemed "necessary or desirable" to conduct business, such as the power: (a) to receive, invest, and expend the Limited Partners' Capital Contributions; (b) to "execute and deliver" any documents "required in connection with any…loan"; (c) "to enter into, perform, and carry out contracts of any kind"; (d) to employ attorneys and incur legal expenses on behalf of Group 48; (e) to use all "commercially reasonable efforts to meet the objectives of the Partnership"; and (f) "to do any and all other things affecting the rights and obligations of the Partnership." (*Id.*).

### C.    Fang's Failed Efforts to Recover His Investment in Group 48.

After signing the LPA in June 2015, Fang submitted an I-526 Petition with United

---

[1] CMB Export and NK Immigration were the Co-General Partners of Group 48 and are referred to collectively in the LPA as the "General Partner." (LPA at Preamble on p. 1).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

States Citizenship and Immigration Services ("USCIS"), which is the first step in the EB-5 process. *See U.S. Immigr. Fund-NY LLC v. Mayorkas*, No. 21-0358 (CKK), 2022 U.S. Dist. LEXIS 42843, *4 (D.D.C. Mar. 10, 2022). USCIS approved that Petition on October 24, 2016, which made Fang immediately eligible to seek conditional LPR status. *See id.* However, Fang voluntarily decided to abandon his EB-5 application. Instead, Fang and Lin applied to become LPRs *by another method*, namely, by virtue of work under the EB-1 priority workers category. In doing so, they became LPRs through the EB-1 program (SAC ¶¶ 12, 13) and, as a result, rendered themselves legally ineligible for EB-5 visas.[2]

Plaintiffs then sued Defendants in California state court in August 2022. They asserted three individual causes of action, all of which sought rescission of the LPA and return of Fang's investment in Group 48 on the grounds that Defendants promised Fang an EB-5 visa but he did not receive one. On February 6, 2024, the California state court issued an Order dismissing all of Plaintiffs' claims on the grounds that their theory of liability ran "counter to the plain language of the LPA," which controlled. (Doc. 46 at p. 3).

Plaintiffs then amended their original Complaint to add class action claims on behalf of all the Group 48 investors, asserting for the first time theories that Defendants fraudulently induced the Limited Partners into investing in Group 48 in the first place by misrepresenting "the safety of the investment," overstating Defendants' prior experience with EB-5 projects, and failing to adequately "protect the Limited Partners' investment" in Group 48 by mismanaging the partnership. (FAC ¶¶ 5, 11, 96).

Defendants moved to dismiss the FAC, and the Court granted that motion in large part, dismissing 9 of Plaintiffs' 10 causes of action. (Doc. 48). In response, Plaintiffs filed their SAC on April 28, 2025. (Doc. 50). But the SAC is too little, too late.

---

[2] Plaintiffs admitted these facts in their August 8, 2023 memorandum filed in state court. (Doc. 35-1 at Ex. 3). These judicial admissions "are conclusively binding upon the Plaintiff[s] and may be considered in [ruling on] a motion to dismiss." *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. SA-CV-14-1645-DOC, 2015 U.S. Dist. LEXIS 191674, *8 (C.D. Cal. Jan. 22, 2015).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## III.    ARGUMENT

Plaintiffs' claims in the SAC fail under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. They should therefore be dismissed again, this time with prejudice and without leave to further amend.

### A.    This Court Lacks Personal Jurisdiction Over Noreen Hogan.

In its Order on Defendants' first motion to dismiss, the Court dismissed the claims against CMB Export's current President, Noreen Hogan, for lack of jurisdiction, but granted Plaintiffs leave to amend. (Doc. 48 at 7-8). In their SAC, Plaintiffs have still failed to establish specific personal jurisdiction over Ms. Hogan.

The allegations against Ms. Hogan in the SAC largely mirror those in the FAC, which the Court already found deficient. For example, Plaintiffs allege in the SAC that Ms. Hogan is "the President of CMB Regional Centers"[3] and that, "in that role, she manages the day-to-day operations of the Company as well as implementing strategic initiatives for CMB." (SAC ¶ 18). According to Plaintiffs, this purportedly included "direct[ing] the selling, marketing, and development of various CMB projects in California, including arranging financial and development deals throughout California." (*Id.*).

The SAC also seeks to impose liability on Ms. Hogan under an alter ego theory, claiming, without any supporting facts, that Ms. Hogan and her father, Patrick Hogan, "personally supervised, controlled, dominated, and operated each of the entity Defendants as their own business and alter ego." (*Id.* at ¶ 26). Plaintiffs also infer from Ms. Hogan's title alone that she necessarily "reviewed, authorized, directed, participated in, and ratified the actions and statements of Patrick Hogan," including any and all communications "made on CMB Regional Centers letterhead." (*Id.* at ¶ 83).

Those conclusory allegations do not suffice to subject Ms. Hogan to suit in California under the three-part test for determining specific personal jurisdiction.

---

[3] "CMB Regional Centers"—incorrectly identified by Plaintiffs as a Texas LLC—is not a standalone entity. (Patrick Hogan Decl. ¶ 3). Rather, it is merely a trade name. (*Id.*).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1.    **There is no purposeful direction or purposeful availment.**

For starters, Plaintiffs' allegations do not establish that Ms. Hogan *personally* "committed an intentional act expressly aimed at the forum state." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). At best, Plaintiffs contend that various entities with which Ms. Hogan is affiliated "target[ed]" or "facilitated" EB-5 projects in California. (SAC ¶ 18). But a corporation's forum contacts are not imputed to its employees. *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020). Rather, personal jurisdiction over Ms. Hogan "must be assessed on the individual's actions alone." *Id.* The fact that CMB Export, Group 48, or any other entity had connections with projects in California does not establish that Ms. Hogan *herself* had minimum contacts with the forum state. Indeed, this Court already advised Plaintiffs of this fatal flaw in their analysis:

> [S]uch general allegations of Defendant Noreen Hogan's connection to corporate defendants without any actions attributed to Defendant Noreen Hogan cannot form the basis of personal jurisdiction. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.").

(Doc. 48 at 8).

Moreover, Plaintiffs' inference that Ms. Hogan must have "reviewed, authorized, directed, participated in, and ratified" all actions of her father and the entity Defendants simply because she is now the President of CMB Export is absurd. To infer that a corporate officer is personally responsible for every act or communication by the company's employees flies in the face of established law. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) ("A corporate director or officer's status" does not subject her to "vicarious liability" for acts of the company or its employees) (cleaned up). The first prong of the minimum contacts test is not met.

2.    **The claims do not relate to any alleged forum activities.**

Because the SAC does not allege that Ms. Hogan engaged in any activities in

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

California in the first place, the claims against her cannot possibly "arise[] out of or relate[] to [her] forum-related activities." *Quiniones v. LG Chem, Ltd.*, No. 2:21-cv-01612-MCE-JDP, 2023 U.S. Dist. LEXIS 74605, *4 (E.D. Cal. Apr. 27, 2023). Moreover, to the extent Plaintiffs are now attempting to assert jurisdiction over Ms. Hogan because entities allegedly under her control have completed "*other* projects in California," such conduct does not give rise to Plaintiffs' claims. (SAC ¶ 17). There is therefore no "connection" between any alleged "activities in California" by Ms. Hogan and Plaintiffs' claims against her in this case, so the second prong fails. *Hellman v. Polaris Indus.*, No. 2:21-cv-00949-JAM-DMC, 2022 U.S. Dist. LEXIS 28447, *7 (E.D. Cal. Feb. 15, 2022).

### 3.    The reasonableness prong is not satisfied.

Lastly, it would not be fair, just, or reasonable to subject Ms. Hogan to suit in California. The "primary concern" under this prong is "the burden on the defendant" in litigating in a foreign state. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 263 (2017). This burden is especially worrisome where, as here, the forum state has "little legitimate interest in the claims in question." *Id.*

As explained in Defendants' choice-of-law analysis in their prior motion to dismiss briefing, California has little to no interest in the claims in this case. (Doc. 35 at ECF pp. 26-28; Doc. 42 at ECF pp. 11-13). The only reason Plaintiffs filed this putative class action in California is because Fang—one of 900 investors in Group 48—purports to live in California, and the Century Plaza hotel is located in Los Angeles. That is insufficient to justify compelling Ms. Hogan into court 1,700 miles from her home in Dallas, Texas, where she works full-time and raises her young children. (Doc. 35-2, Hogan Decl. ¶ 6). It would be an undue and prejudicial burden on Ms. Hogan to force her to litigate this case in this forum—especially considering she could not have "reasonably anticipate[d] being haled into court" in California given her total lack of meaningful, purposeful contacts with California related to this case. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985). For those reasons, the third prong of the minimum contacts test also fails, and Ms. Hogan must be dismissed from this case under Rule 12(b)(2).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**B.      The SAC Names Improper Defendants.**

To satisfy Rule 8, Fed. R. Civ. P., a plaintiff must "explain why each named defendant is being sued by making specific factual allegations that connect each defendant with the alleged wrongdoing." *Lenci v. United States*, No. 19-cv-06526-TSH, 2020 U.S. Dist. LEXIS 201071, *4 (N.D. Cal. Oct. 28, 2020). At bare minimum, this requires the plaintiff to "allege facts showing each defendant's wrongful acts" and how those acts caused "harm or injury" to the plaintiff. *Id.* Plaintiffs have failed to meet that basic pleading standard as to Group 48, CMB Regional Centers, and Noreen Hogan.

*Group 48.*   Group 48 is the limited partnership for the EB-5 investment at issue. The Court previously dismissed the breach of fiduciary duty claim against Group 48 with prejudice. (Doc. 48). The Court also dismissed all other claims against Group 48 with leave to amend to plead sufficient facts to establish either alter ego liability or that Group 48 participated in any misconduct giving rise to liability. (*Id.* at 12, 15). But once again, Plaintiffs have failed to allege any specific wrongdoing by Group 48. And, significantly, Plaintiffs did not include Group 48 in their allegations regarding alter ego liability. (*See* SAC ¶¶ 26–29). Group 48 is therefore not a proper defendant.

*CMB Regional Centers.*   Neither is newly-added Defendant "CMB Regional Centers." As noted above, this is a trade name. It is not a separate entity that can commit acts or omissions. It therefore cannot be sued in this action, or any action.

*Noreen Hogan.* This Court lacks personal jurisdiction over Ms. Hogan, and she should be dismissed on that basis alone. Additionally, the SAC does not establish any basis for holding Ms. Hogan personally liable. The SAC does not contain specifics about the actions Ms. Hogan allegedly took or the harm she allegedly caused. Instead, the SAC asserts only the unsupported legal conclusion that Ms. Hogan functioned as the "alter ego" of Mr. Hogan and the entity Defendants based on her leadership role in CMB Export and other non-party entities. (SAC ¶¶ 26-29). But a bare recitation of the alter ego elements does not suffice. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528, 531 (D. Del. 2008). The pleading must set forth facts showing that the defendants operated as

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

single economic unit based on factors such as capitalization, solvency, corporate formalities, and use of funds. *Id.* The SAC does not meet that standard. Instead, Plaintiffs expect the Court to *infer* wrongdoing by Ms. Hogan simply based on her role as an executive. That is not proper, and the claims against Ms. Hogan must be dismissed.

### C.    Yu Lin Lacks Standing.

Plaintiff Yu Lin lacks standing because she is not a party to the LPA and is not a Limited Partner of Group 48. Only Chen Fang signed the LPA. (SAC ¶ 12 and Ex. H). The SAC does not allege that Lin was a party to the LPA or that she entered into any other contract with any Defendant; nor does the SAC otherwise allege any facts that would give her standing. *CitiMortgage, Inc. v. Bishop*, C.A. No. 09L-07-313 CLS, 2013 Del. Super. LEXIS 95, *4 (Del. Super. Ct. Mar. 4, 2013) ("Under Delaware contract law, a nonparty to a contract generally has no rights relating to it unless he or she is a third-party beneficiary to the contract").

Although the SAC contains a single, self-serving allegation that Fang executed the LPA "on behalf of Plaintiff Lin" (SAC ¶ 12), that allegation is an improper legal conclusion that must be disregarded. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) (A court "is not required to accept legal conclusions in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."). Nothing in the LPA provides that Fang executed the LPA on behalf of a spouse or anyone other than himself. To the contrary, Fang expressly represented in the LPA that his "partnership interest [was] being purchased *for [his] own account*." (LPA § XIX.A.1 on p. 55, emphasis added). Fang also expressly agreed that "there are no representations, agreements, arrangements, or understandings . . . , oral or written, between or among the Parties hereto . . . that are not fully expressed in this Agreement," including any third-party beneficiary rights. (LPA § XVIII.I on p. 54). For these reasons, Lin lacks standing, and all claims asserted by her should be dismissed with prejudice.

### D.    All Causes of Action Must Be Dismissed Under Rule 12(b)(6).

"Dismissal is appropriate" under Rule 12(b)(6) where, as here, the complaint does

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    not "'contain sufficient factual matter, accepted as true, to state a claim for relief that is

2    plausible on its face.'" *Engelbrecht v. County of Placer*, No. 2:23-cv-00286-JAM-CKD,

3    2023 WL 6164030, *2 (E.D. Cal. Sept. 21, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S.

4    662, 678 (2009)). To satisfy the plausibility standard, a plaintiff must provide facts—not

5    merely unadorned accusations. *Iqbal*, 556 U.S. at 678-79. Likewise, conclusory or

6    formulaic recitations of elements do not suffice. *Id.* Instead, the court must be able to

7    draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

8    The SAC fails to meet that pleading standard for the reasons stated below.

**1.    Plaintiffs' fraudulent inducement claims fail.**

10    Plaintiffs' first and eighth causes of action for "fraud in the inducement" and

11    "rescission for fraudulent inducement" are time-barred, foreclosed by the terms of the

12    LPA, and not pled with sufficient particularity.

**(a)    The fraudulent inducement claims are time-barred.**

14    The Court dismissed Plaintiffs' claims for fraudulent inducement and rescission as

15    untimely, but with leave to amend to plead sufficient facts to invoke the discovery rule.

16    (Doc. 48 at 12-13). Plaintiffs have failed to do that. In order to toll the statute of limitation,

17    a plaintiff must "plead facts that show it was 'practically impossible for [him] to discover

18    the existence of a cause of action.'" *Dubose v. Wyndham Vacation Resorts, Inc.*, No. 20-

19    1118-CFC, 2021 U.S. Dist. LEXIS 138475, *7 (D. Del. July 26, 2021) (quoting *In re Tyson*

20    *Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007)).[4] If the plaintiff "could have discovered

21    his rights by the exercise of reasonable diligence," but failed to do so, the discovery rule

22    does not revive his claims. *Id.*[5]

23    _____

[4]    The LPA contains an enforceable Delaware choice-of-law provision. (LPA § XVIII.J on
24    p. 54). The law is clear that "claims seeking to rescind [a] contract on grounds of
       misrepresentation" or fraud are "covered by the choice of law provision contained in" that
25    contract. *ABRY Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1046-1048
       (Del. Ch. 2006)*;see also Gardensensor, Inc. v. Stanley Black & Decker, Inc.*, 3:12-cv-
26    03922-NC, 2012 WL 12925714, at *3 (N.D. Cal. Oct. 25, 2012) (same in California).

27    [5]    "[T]he 'plaintiff-friendly inferences' required in the usual Rule 12(b)(6) analysis 'do[] not
       govern assertion of tolling exceptions to the operation of a statute of limitations.'" *Id.* at *9
28    (quoting *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 525 (Del. Ch. 2005)). The
       plaintiff must plead with particularity facts to allow the court to determine whether the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   Plaintiffs' fundamental theory in the SAC is that they "could not have discovered"

2   their claims until "August 14, 2020, at the very earliest, when it was revealed for the first

3   time that Mr. Hogan had waited six months to report to Limited Partners that J.P. Morgan

4   had declared the construction loan 'out of balance.'" (SAC ¶ 84). This theory is specious.

5   For starters, there is no logical connection between (a) CMB Export's alleged

6   delay in notifying the Limited Partners about the developer's default on the Senior Loan

7   and (b) Plaintiffs' fraudulent inducement claims. Without explanation, Plaintiffs claim that

8   learning of this alleged delay in communication somehow provided them with reason to

9   believe "that Defendants' actions were violating the law, particularly with regard to

10  managing the project." (SAC ¶ 84). But how, precisely, the delay in providing notice of

11  the Senior Loan amounted to a legal violation or a fraudulent misrepresentation is

12  unclear and unpled. Moreover, alleged mismanagement of the Project after-the-fact does

13  not support a claim of fraudulent inducement to enter the LPA in the first place.

14  Plaintiffs' contention that they had "no reason" to investigate their claims prior to

15  August 14, 2020 is also belied by their own pleading. (SAC ¶ 86). By Plaintiffs' own

16  admission, CMB Export notified the Limited Partners as early as December 2017 about

17  issues with the project. (SAC Ex. J). On December 12, 2017, CMB Export notified the

18  Limited Partners that the developer had already spent "in excess of" $100 million and

19  had requested to restructure the senior loan on the project "to fund approximately $90

20  million in additional costs" for Phase I alone. (*Id.*) Part of those extra Phase I costs arose

21  because the Los Angeles County Metropolitan Transportation Authority had required the

22  developer to "reinforce and redesign the foundation to the Project"—a significant

23  undertaking. (*Id.*). CMB Export further apprised the Limited Partners that completing

24  Phase II of the project would entail another "approximately $781 million." (*Id.*).

25  Then, on August 30, 2018, CMB Export wrote the Limited Partners again with

26  financial information about the project. (SAC Ex. K). It notified the Limited Partners that

27  _____

alleged fraud should have been discovered sooner. *Winklevoss Capital Fund, LLC v.*
28  *Shaw*, No. 2018-0398-JRS, 2019 Del. Ch. LEXIS 75, *22 (Del. Ch. Mar. 1, 2019).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

11

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

the Senior Mezzanine Lender, CDCF IV Century Mezz, LLC ("Colony"), had agreed to increase the size of its loan by nearly $135 million to support Phase II construction activities. (*Id.*). The Senior Lender had done the same, nearly doubling the size of its loan to $985,280,000. (*Id.*). Thus, the "non EB-5" debt on the project totaled roughly $1.3 billion as of August 2018. (*Id.*). CMB Export noted that, although it "appear[ed]…the project [was] proceeding consistent with the development schedules…Group 48 [was] not involved in the construction of the Project and must necessarily rely upon the reports submitted by [the developer] to determine the progress of the Project." (*Id.*).

On July 30, 2019, CMB Export wrote to the Limited Partners again about "cost overruns" and other issues. (SAC Ex. L). It told the Limited Partners that the developer had already "spent in excess of $1.3 billion," even though the project was only 52% complete, and that additional funding would be needed for continued construction activities, architectural and engineering fees, furniture, fixtures, and equipment, and other expenses. (*Id.*). Accordingly, the project budget had increased to $2.4 billion. (*Id.*).

Then, when COVID-19 hit, the General Partner wrote to the Limited Partners "on March 25, 2020" about the effect of the pandemic "on construction and/or future operations of the Project," including work stoppages and cost overruns. (SAC Ex. M). The General Partner provided another update on June 19, 2020, notifying the Limited Partners about "delays in construction progress," "cost overruns," shortages of "building materials," and decreased projected "revenues of the Project." (*Id.*) It further stated that these issues would "likely result in further amendments to the existing loans in the foreseeable future." (*Id.*, emphasis added). Thus, it is clear from Plaintiffs' own pleading that they were aware of financial issues with the project well before August 14, 2020.

Plaintiffs also fully understood that Group 48 held a junior position on the project, as this was disclosed to Fang before he even invested in Group 48. The PPM notified Fang that Group 48's loan would be subordinate to the Senior Loan. (PPM at pp. 30-31). The PPM explicitly advised Fang that, due to the Senior Loan's priority position, any "event of default" under the Senior Loan would "negatively impact the repayment" of

Group 48's loan "and thus the Investor's return" of his Capital Contribution. (*Id.*).

Despite knowing about issues with the Senior Loan and Group 48's subordinate position, Plaintiffs still did nothing to timely investigate any potential claims against Defendants. If Plaintiffs genuinely had concerns about the loan upsizings or the management of the Project, they could have—and should have—pursued those claims sooner. Instead, they sat on their hands. As a result, they cannot be said to have "lacked the ability to discover these issues" sooner and cannot "be fairly described as blameless." *Dubose*, 2021 U.S. Dist. LEXIS 138475, at *10 (citing *Smith v. Donald L. Mattia, Inc.*, No. 4498-VCN, 2012 Del. Ch. LEXIS 8, at *10 n.18 (Del. Ch. Jan. 13, 2012) ("An injury is not 'inherently unknowable' where a plaintiff possesses all of the tools to discover it, but simply waits a while.")). Plaintiffs therefore cannot toll the statute of limitation, and their fraud claims must be dismissed.

**(b)    The relation-back doctrine does not apply.**

Even if the Court were to accept Plaintiffs' contention that they could not possibly have discovered their claims until August 14, 2020, their fraud claims would still be untimely. Both California and Delaware law apply a three-year statute of limitations to claims of fraudulent inducement. (*Id.* at 12 (citing Cal. Civ. Proc. Code § 338(d); *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001); 10 Del. C. § 8106)). Plaintiffs did not file their fraud claims until March 7, 2024—well over three years after August 14, 2020.

Plaintiffs attempt to evade this fatal result by claiming that they "filed their *initial*, pre-removal complaint in this action in August 2022." (SAC ¶ 88, emphasis added). However, Plaintiffs' initial Complaint was a sparse, 7-page pleading that asserted only three causes of action: (1) rescission based on frustration of purpose because Fang no longer needed an EB-5 visa, (2) breach of the implied covenant of good faith and fair dealing for refusing to refund his investment after he became an LPR under the EB-1 priority workers program, and (3) unjust enrichment. (Doc. 46-1). The original Complaint did not advance any fraud theories and did not contain virtually any of the allegations later advanced by new counsel in the FAC and the SAC. (*See id.*). Consequently,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

13

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1  Plaintiffs cannot rely on the relation-back doctrine to save their untimely claims. *LPPAS*

2  *Representative, LLC v. ATH Holding Co., LLC*, No. 2020-0241, 2020 Del. Ch. LEXIS

3  372, *18 (Del. Ch. Dec. 29, 2020) (the relation-back doctrine does not apply to "new facts

4  and legal theories that were not asserted" in the prior pleading).

5             **(c)     The fraud claims contradict the contractual language.**

6         Fraudulent inducement is not actionable "'when one had the opportunity to read

7  the contract and by doing so could have discovered the misrepresentation.'" *Carrow v.*

8  *Arnold*, No. 182-K, 2006 Del. Ch. LEXIS 191, *36 (Del. Ch. Oct. 31, 2006), *aff'd*, 933

9  A.2d 1249 (Del. 2007) (quoting 17A Am. Jur. 2d Contracts § 214 (2006)). Plaintiffs claim

10  Defendants fraudulently induced Fang into investing in Group 48 by misrepresenting "the

11  safety of the investment." (SAC ¶ 105). However, Plaintiffs admit they "reviewed" the

12  LPA before Fang signed it (SAC ¶¶ 53, 61), and the LPA is replete with disclosures that

13  Fang's investment was at risk of total loss. (*See, e.g.,* LPA § XIX.A.11 on p. 57; LPA §

14  IV.C.1 on p. 17; LPA § V.D on p. 21; LPA § XIX.A.3.d on p. 55). Given that contractual

15  language, the fraud claims fail to the extent they are based on statements about the

16  safety of investing in Group 48. *S'holder Reps. Servs. LLC v. Albertsons Cos.*, No. 2020-

17  0710-JRS, 2021 Del. Ch. LEXIS 115, *27 (Del. Ch. June 7, 2021).[6]

18         Plaintiffs also allege Defendants mispresented in 2015 that the senior construction

19  loan "had been secured when it had not." (SAC ¶ 105). This too is false. Before he even

20  invested in Group 48, Fang received and signed the Private Placement Memorandum

21  ("PPM"), which contained the LPA and other offering documents for his investment.[7] The

---

22  [6] The result would be the same under California law, which provides that a fraudulent

23  misrepresentation claim cannot lie where it contravenes the plain language of the
    contract. *In re Lau Capital Funding*, 321 B.R. 287, 303 (C.D. Cal. Bank. Feb. 15, 2005).

24  [7]  The Loan Agreement and the LPA are attached to the SAC as Exhibits B and G,

25  respectively, and both of those are *part of* the PPM. Thus, the Court may fairly "consider
    the entire" PPM—not only the portions self-selected by Plaintiffs—in ruling on the present

26  motion, "without converting it into a motion for summary judgment." *Appel v. Wolf*, No. 18-
    CV-814 L (BGS), 2019 U.S. Dist. LEXIS 13377, *11-12 (S.D. Cal. Jan. 25, 2019). The

27  PPM is also already part of the record in this case, as it was attached to Defendants'
    Answer to Plaintiffs' original Complaint and also resubmitted with Defendants' motion to

28  dismiss the FAC.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

PPM explicitly notified the investors that the developer had only "executed a *term sheet* with [the] Construction Lender for the funding of up to $900,000,000" with a "proposed term" of 36 months. (Doc. 42-1, Humphreys Decl. Ex. 1 at 124). The PPM made clear that the Construction Loan had not yet been executed. (*See id.* ("When the Construction Loan Documents and the Intercreditor Agreement are executed, the Partnership will subordinate certain of its interests, rights and remedies created by the Loan Agreement…to Construction Lender….")). Thus, once again, the alleged misrepresentation is contradicted by Fang's contract and cannot stand.

**(d)    The remaining representations are not actionable.**

The only remaining fraud-based allegations in the SAC are that Defendants purportedly misrepresented their "expertise", "skill", and "track record" with respect to other EB-5 projects. (SAC ¶¶ 5, 105). However, any such alleged statements are non-actionable puffery. "Alleged representations about management's abilities and future performance…'cannot form the basis for a fraud claim'" under Delaware law. *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, No. 2017-0500-JRS, 2018 Del. Ch. LEXIS 182, *27-28 (Del. Ch. June 6, 2018) (*quoting Solow v. Aspect Res., LLC*, No. 20397, 2004 Del. Ch. LEXIS 151, *13 (Del. Ch. Oct. 19, 2004) (statements that a person has "the skills, experience, and resources to successfully and quickly capitalize on [an] opportunity" were "mere puffery" unable to support a fraud claim)).

Likewise, "statements of opinion" in business marketing materials, such as those referenced in the SAC, are not actionable. *See, e.g., Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 209 (Del. Ch. 2006) (dismissing fraud claim premised on "statements of expectation or opinion about the future of the company and the hoped for results of business strategies").[8]

---

[8] *See also Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, No. 2023-0699-JTL, 2024 Del. Ch. LEXIS 216, *24 (Del. Ch. June 10, 2024) ("[A] counterparty's optimistic statements praising its own skills, experience, and resources are mere puffery and cannot form the basis for a fraud claim"); *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. 3088-VCP, 2008 Del. Ch. LEXIS 196, *24 (Del. Ch. Dec. 23, 2008) (defendant's "promise[s] that with his expertise and management he would expand the

---

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1    For all of those reasons, Plaintiffs' fraud claims in Counts I and VIII of the SAC

2  should be dismissed.[9]

3    **(e)    The fraud claims are insufficiently pled.**

4    The fraudulent inducement claims also fail because Plaintiffs still have not pled

5  these claims with particularity. Fraud claims are subject to the heightened pleading

6  standard of Fed. R. Civ. P. 9(b). *Metro Commun. Corp. BVI v. Advanced Mobilecomm*

7  *Techs. Inc.*, 854 A.2d 121, 150 (Del. Ch. 2004); *DG BF, LLC v. Ray*, C.A. No. 2020-

8  0459-MTZ, 2021 Del. Ch. LEXIS 37, *47 (Del. Ch. Mar. 1, 2021). To satisfy Rule 9(b),

9  Plaintiffs must allege with particularity the "the who, what, when, where, and how" of the

10  alleged fraud. *Keystone Assocs. LLC v. Barclays Bank PLC*, No. 19-796 (MN), 2020 WL

11  109008, at *2 (D. Del. Jan. 9, 2020) (citations omitted). Importantly, "when a plaintiff

12  alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff separately

13  plead the allegedly fraudulent acts of each defendant." *In re Fruehauf Trailer Corp.*, No.

14  96-01563(PJW), 2011 WL 2838168, *4 (D. Del. Bank. July 15, 2011) (citations omitted);

15  *accord MDNet, Inc. v. Pharmacia Corp.*, 147 Fed. App'x. 239, 245 (3rd Cir. 2005).

16  "Generalized allegations against a group of defendants are deficient under Rule 9(b) in

17  that they fail to apprise the defendants of the precise misconduct of which they are

18  accused." *In re Fruehauf*, 2011 WL 2838168, at *4.

19    Once again, the SAC "does not separately plead the allegedly fraudulent acts of

20  the Defendants." *See id*. Plaintiffs do not articulate specific statements made by specific

21  persons upon which Fang (or any other Limited Partner) relied in deciding to invest in

22  Group 48. Instead, Plaintiffs engage in "group pleading" against all defendants, claiming

23  baldly that "Defendants made numerous false statements in emails, the CMB brochure,

24  —————————————

    mail business" were "mere pun and puffery").

25  [9]  The result would not differ under California law. *See Lantz Ret. Invs. LLC v. Glover*,
26  No. 1:19-cv-00379-NONE-SAB, 2021 U.S. Dist. LEXIS 246213, at *18-19 (E.D. Cal. Dec.
    23, 2021). *See also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051,
27  1060, 1064 (9th Cir. 2014) ("statements of mere corporate puffery, vague statements of
    optimism…or other feel good monikers, are not actionable because…most amateur
28  investors…know how to devalue the optimism of corporate executives").

the Project overview and marketing brochure for Group, and in the LPA[.]" (SAC ¶¶ 105, 154). On this basis alone, the fraud claims are deficient and must be dismissed. *Trusa v. Nepo*, No. 12071-VCMR, 2017 WL 1379594, *9 (Del. Ch. Apr. 13, 2017) (dismissing fraud claim because "a plaintiff cannot lump together defendants but must identify specific acts of individual defendants and who made any particular misrepresentation").[10]

### 2.    Plaintiffs' Gross Negligence Claim Is Untimely.

Applying Delaware law, the Court dismissed Plaintiffs' negligence and gross negligence claims based on Defendants' alleged mismanagement of Group 48 with prejudice and without leave to amend as barred by the economic loss doctrine. (Doc. 48 at 13-14). However, to the extent Plaintiffs' negligence claims rested on Defendants' alleged "inducement of Plaintiffs' investments" in Group 48, the Court dismissed the claims as untimely with leave to amend. (*Id.* at 14-15).

In the SAC, Plaintiffs abandoned their ordinary negligence claim and asserted only what is now Count VII for gross negligence. However, Plaintiffs ignored the Court's Order limiting their negligence claim to solely the alleged inducement to sign the LPA. To the extent the SAC attempts to resurrect the portions of this claim that were already dismissed with prejudice, it is improper and must be rejected. (*See* SAC ¶¶ 145-147, alleging Defendants were grossly negligent in their management of the Partnership because they lacked the requisite skills and were spread too thin).

As to Plaintiffs' theory that Defendants were grossly negligently in inducing Plaintiffs to sign the LPA in the first place, this claim is untimely for the same reasons stated above with respect to the fraudulent inducement claims. *See Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006) ("the applicable statute of limitations is 10 Del. C. § 8106, which imposes a three-year period for claims of negligent misrepresentation").

---

[10] California also follows Fed. R. Civ. P. 9, which "does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Mountjoy v. Bank of Am.*, No. 2:15-cv-02204-TLN-AC, 2016 WL 4192416, at *5 (E.D. Cal. Aug. 9, 2016).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Because the gross negligence claim was not timely asserted, it must be dismissed.[11]

### 3. Plaintiffs' Fiduciary Duty Claim Is Barred.

The Court ruled that Delaware law applies to Plaintiffs' claim that Defendants breached their fiduciary duties. (Doc. 48 at 15). The Court also held that the fiduciary duty claim was untimely (except for Plaintiffs' claim that the General Partners allegedly breached their duties by failing to take remedial action in response to the developer's default of the amended loan agreement in July 2021).[12] (*Id.* at 16-17). As to Noreen and Patrick Hogan, the Court dismissed the breach of fiduciary duty claim with leave to amend to plead facts sufficient to show they personally "caused" the General Partners to breach their fiduciary duties for purposes of advancing their own "personal interests." (*Id.* at 15-16). Once again, the SAC does not comply with the Court's directives.

### (a) Liability cannot extend beyond the General Partner.

Non-parties to a contract do not bear its contractual liabilities, including the fiduciary duties it creates. *Gelfman v. Weeden Invs., LP*, 792 A.2d 977, 992 n.24 (Del. Ch. 2001). The only way to overcome this limitation, is to allege facts that establish the non-party "acted in a way that is potentially advantageous to [his] personal interests and at the expense of the limited partners . . ." and caused the general partner to breach its fiduciary duty. *Gelfman*, 792 A.2d at 992 n.24.

Plaintiffs attempt to meet that standard by alleging that "Mr. Hogan is the

---

[11] Even if Plaintiffs' gross negligence claim was neither untimely (it is) nor barred by the economic loss rule (it is), Plaintiffs again fail to plead with "sufficient particularity" that Defendants' actions constituted "a gross deviation from the standard of conduct that a reasonable person would observe in the situation"—not merely "ordinary inadvertence or inattention." *GEA Sys. N. Am. LLC v. Golden State Foods Corp.*, No. N18C-11-242 EMD CCLD, 2020 WL 3047207, at *11 (Del. Super. Ct. June 8, 2020).

[12] The Court concluded that Plaintiffs' allegation that Defendants breached their fiduciary duty by "'failing to declare default on the Group 48 loan or take other remedial action when the Developer breached the loan agreement'" in July 2021 falls *within* the 3-year statute of limitations for fiduciary duty claims without the need to invoke the discovery rule. (Doc. 48 at 17, quoting FAC ¶ 115.f). However, Plaintiffs seem to split and repurpose this allegation into the not-quite-identical: "Failing to timely notify the Limited Partners of the default on the loans" and "Failing to take commercially reasonable steps to prevent Reuben Brothers' foreclosure of the project." (*See* SAC ¶ 129.g–129.h).

---

18

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

managing member of both CMB Export and NK Immigration Services, and thus responsible for any and all actions taken by those entities" and that "Mr. Hogan made all decisions described herein on behalf of the Partnership." (SAC ¶ 127). Those conclusory allegations do not suffice to overcome the general rule in Delaware that individual managers of corporate general partners do not owe fiduciary duties to the limited partners "even though they make the decisions for that business entity." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. 15754-NC, 1998 Del. Ch. LEXIS 226, *19 (Del. Ch. Nov. 10, 1998). To hold otherwise "would undermine [Delaware's] established policy of respecting the legal fiction of the business entity" and effectively "accord[] the business entity no role as general partner." *Id.* Indeed, the SAC seeks to impose liability on Mr. Hogan personally simply by virtue of his title. But Delaware law does not permit that, so SAC Count IV must be dismissed as to Mr. Hogan.[13]

### (b)    Portions of this claim are time-barred

Plaintiffs' additional allegations, as pleaded, also fail to overcome the three-year statute of limitations applicable to breach of fiduciary duty claims. *Dubroff v. Wren Holdings, LLC*, No. 3940-VCN, 2011 Del. Ch. LEXIS 164, at *44-45 (Del. Ch. Oct. 28, 2011). *See also ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020) (A cause of action accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.") (internal quotation marks omitted).

Plaintiffs asserted their fiduciary duty claims for the first time with their FAC on May 7, 2024, so any alleged breach of fiduciary duty that occurred prior to May 7, 2021 is time-barred. This includes Plaintiffs' allegations in the SAC that the General Partner breached fiduciary duties by allegedly:

(a)    "taking the role of a General Partner" of Group 48 in 2015 "without the requisite expertise" and "failing to take steps to remedy their lack of knowledge as the deal began to fall apart" in 2020;

---

[13] The SAC appears to abandon the fiduciary duty claim against Noreen Hogan. To the extent Plaintiffs intended this claim to apply to Ms. Hogan, it fails for the same reasons.

19

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

(b)   "taking on the role of General Partner in Group 48" in 2015 when CMB Export was allegedly "already responsible for dozens of other construction projects";

(c)   "obtaining unfavorable construction loan terms on behalf of the Group 48 Limited Partners" in 2015 when the construction loan was originally procured and/or in 2020 when it was restructured;

(d)   "agreeing to a restructuring of the loans" in 2020 when Reuben Brothers entered the capital stack for the project "after JP Morgan declared the [senior] loan out of balance";

(e)   failing to infuse additional capital into the project in 2020 "by participating in funding the monthly construction draws or reimbursing the Senior and Mezzanine lenders"; and

(f)   "giving Reuben Brothers loan terms" in 2020 that would later "allow it to takeover the project and eliminate Group 48's economic interests."

(SAC ¶ 129). The SAC does not establish that the discovery rule applies to toll the statute of limitations as to any of those untimely claims. (*See supra* § III.D.1.a). Plaintiffs' fiduciary duty claims related to the above-referenced alleged actions or inactions should therefore be dismissed with prejudice.

### 4.    Plaintiffs' Breach of Contract Claim Cannot Stand.

Plaintiffs' third cause of action for breach of contract fails under Delaware law. (*See* Doc. 48 at 18). As previously argued, under Delaware law, Plaintiffs cannot bring breach of contacts claims against non-parties to the contract. Plaintiffs fail to plead sufficient facts to establish non-parties, including Patrick Hogan, acted as the alter ego of Defendant entities for purposes of imposing liability.

### (a)    The non-parties to the LPA are not liable.

In Delaware, "only a party to a contract may be sued for breach of that contract." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) ("[Defendants] cannot be held liable for breach of the Partnership Agreement because they were not parties to it."); *Tygon Peak Cap.l Mgmt., LLC v. Mobile Invs. Investco, LLC*, C.A. No. 2019-0847-MTZ, 2022 Del. Ch. LEXIS 4, *58 (Del. Ch. Jan. 4, 2022) ("Delaware does not recognize breach of contract claims against non-parties to the

20

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1    contract.") (citation omitted).[14]

2    The Court previously dismissed all claims against non-parties to the LPA, with

3    leave to amend to plead facts sufficient to show alter ego liability. (Doc. 48 at 11, 18). In

4    assessing alter ego claims under Delaware law, courts must consider several factors

5    about the parent and subsidiary companies, and their relationship to each other,

6    including: "(1) whether the company [i.e., the subsidiary] was adequately capitalized for

7    the undertaking; (2) whether the company was solvent; (3) whether corporate formalities

8    were observed; (4) whether the dominant shareholder [i.e., the asserted alter ego of the

9    company in question] siphoned company funds; and (5) whether, in general, the

10   company simply functioned as a facade for the dominant shareholder." *Harrison v.*

11   *Soroof Internat'l, Inc.*, 320 F. Supp. 3d 602, 619 (D. Del. 2018) (quoting *Sprint Nextel*

12   *Corp. v. iPCS, Inc.*, C.A. No. 3746-VCP, 2008 WL 2737409, at *11 (Del. Ch. July 14,

13   2008)). "A formulaic recitation of the elements" of alter ego liability "will not do." *Trevino*,

14   583 F. Supp. 2d at 526. Instead, Plaintiffs must "plead facts" sufficient to support each

15   element of the alter ego test. *Id.* at 531. They have failed to do so here.

16   In support of their theory of alter ego liability, Plaintiffs include only conclusory

17   allegations against Patrick Hogan and Noreen Hogan that amount to a mere recitation of

18   the legal elements. For example, Plaintiffs claim Mr. Hogan and Ms. Hogan "personally

19   supervised, controlled, dominated, and operated each of the entity Defendants as their

20   own business and alter ego" and that "a unity and identity of interest and ownership

21   existed between" Defendant entities and the Hogans "such that there is no individuality

22   and separateness between them." (SAC ¶ 26; *see also id.* ¶¶ 46, 66-67, 79, 82-83).

23   However, the only specific *facts* Plaintiffs plead are that (1) the Hogans were

24   principals or otherwise occupied leadership roles for allegedly related entities (several of

25   which are not parties to this case) and that those entities share the same mailing

26   addresses, (2) CMB Export, NK Immigration, and the trade name CMB Regional Centers

---

27   [14] California law is the same. *Luis v. Orcutt Town Water Co.*, 204 Cal. App. 2d 433, 443-
28   44 (1962) (plaintiffs failed to state a claim for breach of contract because they were not
     parties to the contract).

share a mailing address, (3) the names of Mr. Hogan and Ms. Hogan appeared on correspondence sent to Group 48's Limited Partners, and (4) correspondence to Plaintiffs appeared on CMB Regional Centers letterhead. (SAC ¶¶ 26-28, 46, 66-67, 83).

These factual allegations—none of which actually asserts any wrongdoing—fall well short of plausibly pleading alter ego liability. As a matter of law, merely alleging that multiple entities "shared officers and directors" and "operated out of the same locations" does not suffice to plead alter ego liability. *vMedex, Inc. v. TDS Operating, Inc.*, No. 18-1662 (MN), 2020 U.S. Dist. LEXIS 152059, *30-31 (D. Del. Aug. 21, 2020). And "Plaintiffs have not adequately pled facts sufficient to support" any of the other factors used "for determining whether a 'single economic entity' exists." *Trevino*, 583 F. Supp. 2d at 528. Plaintiffs do not—and cannot—plead any "undercapitalization", "failure to observe corporate formalities", "insolvency" of Group 48 prior to foreclosure of the project, "siphoning" or commingling of assets, "absence of corporate records", or that any of the entities are "merely a facade for the operations of" the Individual Defendants. *Id.* Plaintiffs also fail to establish why piercing the corporate veil is necessary to remedy "fraud, injustice, or inequity." *See id.* at 530. For those reasons, Plaintiffs' alter ego theory is not sufficiently pled, and Count III fails as to the non-parties to the LPA.

**(b)     The contract claim is insufficiently pled in the SAC.**

To plead a breach of contract claim under Delaware law, a plaintiff must plead the specific provision of the contract allegedly breached by the defendant. *Ryan v. Buckeye Partners, L.P.*, No. 2021-0432-JRS, 2022 Del. Ch. LEXIS 31, *13 (Del. Ch. Feb. 9, 2022). Failure to do so "is not a technical foot fault; it reflects, instead, a fundamental failure to give [Defendants] fair notice of the claim asserted against them." *Id.* In accordance with that jurisprudence, this Court previously dismissed the contract claim as against the co-General Partners, CMB Export and NK Immigration, with leave to amend to plead specifically which provisions of the LPA the General Partners allegedly breached and how those provisions were breached. (Doc. 48 at 20).

In response, Plaintiffs first contend that Defendants violated LPA § IV.C.3. (SAC

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

¶ 118). But that provision does not impose any obligations on the General Partner.

Rather, it merely states that "*the Partnership* shall use commercially reasonable efforts to

advance and accomplish the Partnership's business and purpose as set forth in Article III

of this Agreement." (LPA § IV.C.3 on p. 18). The Partnership (Group 48) is not a

signatory to the LPA and cannot be liable for breaching it. (*See supra* § III.D.4.a).

Plaintiffs next contend Defendants breached LPA § VI.A.3. (SAC ¶ 119). Not so.

This provision states:

> [T]he General Partner shall have **full, exclusive, and complete discretion, power and authority**, to manage, control, administer, and operate the business and affairs of the Partnership…including, without limitation,…***the power***…to use commercially reasonable efforts to meet the objectives of the Partnership…"

(LPA § VI.A.3). By its plain language, LPA § VI.A.3 only grants powers to the General

Partner. It is not an "affirmative covenant" requiring the General Partner to take any

action. *Cf. Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 746,

769 (Del. Ch. 2009) (dismissing breach of contract claim premised on contract provision

that merely stated the defendant "had the authority and power" to take certain actions

because this provision "did not impose obligations" on the defendant). For this reason,

neither CMB Export nor NK Immigration can be said to have breached LPA § VI.A.3.

Finally, Plaintiffs allege Defendants violated LPA § VI.G. (SAC ¶ 120). But once

again, this allegation is time-barred. For example, Plaintiffs contend the General Partner

breached LPA § VI.G by "taking on the job of general partner without the experience and

skill necessary to handle the project." (*Id.* at ¶ 122). However, CMB Export took on the

role of General Partner of Group 48 in 2015—well beyond the statute of limitation. 10

Del. Code § 8106. Plaintiffs also contend the General Partner breached LPA § VI.G by

"taking on the role of general partner in dozens of other partnerships," "failing to monitor

the affairs of the Partnership," and allegedly taking "fees each time the construction

loans were restructured." (SAC ¶¶ 120, 122). But the SAC does not state *when* those

alleged breaches occurred or provide sufficient other details about them to establish that

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

the allegations are timely asserted. Plaintiffs have therefore failed to meet their burden of proving the timeliness of their claim, and SAC Count III must be dismissed.

### 5.    Plaintiffs' Implied Covenant Claim Is Fatally Flawed.

In Delaware, the implied covenant of good faith and fair dealing "is a limited and extraordinary legal remedy" that "is rarely invoked successfully." *Ryan*, 2022 Del. Ch. LEXIS 31, at *15. It "cannot be invoked where the contract itself expressly covers the subject at issue," and it cannot be used to create new or different rights not contemplated by the contract. *Id.*; *see also Nemec v. Shrader*, 991 A.2d 1120, 1126 n.18 (Del. 2010) ("Existing contract terms control . . . such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty unattached to the underlying legal document.").[15] Consequently, the Court dismissed Plaintiffs' original claim for breach of the implied covenant of good faith and fair dealing with leave to amend to plead facts sufficient to show that Defendants' "conduct in question is not addressed by the contract." (Doc. 48 at 21, citation omitted). The SAC does not do that.

In the SAC, Plaintiffs add allegations that "Defendants breached the covenant of good faith and fair dealing by making decisions that were in their own self-interests over the interest of the Limited Partners." (SAC ¶ 135). Specifically, Plaintiffs allege Defendants breached the implied covenant by (a) "borrowing increased amounts of money than those disclosed to the Limited Partners," (b) "restructuring those loans to obtain fees while pushing the burdens solely on to the Limited Partners," and (c) "protecting their own interests over those of the Limited Partners in the default and foreclosure process." (*Id.*). As a preliminary matter, Plaintiffs' allegations are vague, confusing, and conclusory and fail to provide notice under Rule 8 of how Defendants failed to act and what harm or injury came to Plaintiffs as a result. But even if read with

---

[15] California law likewise provides that "a party may not use the covenant to create additional rights not contemplated by the contract's terms." *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1086 (C.D. Cal. 2017). A party also cannot use the covenant in California "to override an express provision of the contract." *Gerdlund v. Elec. Dispenser Int'l*, 190 Cal. App. 3d 263, 277 (1987).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

24

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

inferences most favorable to Plaintiffs, these allegations run headlong into the LPA.

In the LPA, the Limited Partners agreed that "the General Partner shall have full, exclusive, and complete discretion, power and authority, to manage, control, administer, and operate the business and affairs of the Partnership." (LPA § VI.A on pp. 24-25). This included the power to "do all things which [the General Partner] deem[ed] necessary or desirable" to conduct business, specifically including entering into contracts, executing loan documents, investing the Limited Partners' Capital Contributions, and paying all expenses of the Partnership. (*Id.*). To the extent Plaintiffs are now claiming the General Partner did not carry out those duties in "good faith," such allegations are already covered by Plaintiffs' breach of contract claim. (*See* SAC ¶¶ 118-20).

Indeed, Plaintiffs have already asserted a claim that the General Partner breached LPA § VI.G, which provides that "the General Partner shall perform its duties in good faith." (*Id.*). Thus, the LPA fully "occupies the spaces where Plaintiff[s] would have the Court shoehorn the implied covenant." *Ryan*, 2022 Del. Ch. LEXIS 31, at *15. SAC Count V must be dismissed. *Cilag GmbH Int'l v. Hospira Worldwide, LLC*, No. 22-589-RGA-SRF, 2022 U.S. Dist. LEXIS 220118, *17-18 (D. Del. Dec. 6, 2022) ("[W]hen the contract addresses the conduct at issue, breach of the implied covenant cannot be invoked").[16]

### 6. Plaintiffs' Unjust Enrichment Claim Fails.

In its March 31, 2025 Order, the Court declined to dismiss Plaintiffs' unjust enrichment claim to the extent (a) it is pled "in the alternative" to Plaintiffs' breach of contract claim, and (b) it is based on Plaintiffs' belief that the LPA was "the product of fraud by Defendants." (Doc. 48 at 22). However, this claim can no longer survive based upon Plaintiffs' amendments in the SAC.

***First,*** Plaintiffs failed to plead unjust enrichment in the alternative to their contract claim. To the contrary, Plaintiffs expressly incorporated allegations of an express contract into their unjust enrichment claim. (*See* SAC ¶ 137, incorporating by reference

---

[16] *See also Okura & Co. v. Careau Grp.*, 783 F. Supp. 482, 503 (C.D. Cal. 1991) (rejecting implied covenant claim that was "merely cumulative" of breach of contract claim).

"each preceding and succeeding paragraph" into Count VI, including SAC ¶ 152, which states that "Plaintiffs have a valid contract, the LPA, with Defendants."). That is fatal to their unjust enrichment claim. *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008); *Echo & Rig Sacramento, LLC v. AmGuard Ins.*, 698 F. Supp. 3d 1210, 1218-19 (E.D. Cal. 2023).

**Second,** to the extent the unjust enrichment claim is predicated on Plaintiffs' fraud claims, the fraud claims are untimely and insufficiently pled for all the reasons stated above. (*See supra* § III.D.1). Thus, this unjust enrichment theory fails too.

### 7.    The California Unfair Competition Claim Is Time-Barred.

The Court dismissed Plaintiffs' UCL claim to the extent it is based on Defendants' "actions as general partners to the limited partnership," as Delaware law applies to claims arising out of the LPA. (Doc. 48 at 22-23). The Court further held that, to the extent the UCL claims are based on Plaintiffs' fraudulent inducement theory of liability, they are dismissed as untimely, with leave to amend, because they were not brought within four years of the signing of the LPA. (*Id.* at 23). Plaintiffs have not remedied that.

Indeed, Plaintiffs made no changes to their UCL claim in the SAC other than to incorporate-by-reference the additional allegations discussed above for application of the discovery rule. Specifically, Plaintiffs again point to Defendants' August 2020 letter to the Limited Partners as the triggering event that purportedly put Plaintiffs on inquiry notice regarding Defendants' alleged mismanagement of the Partnership. (SAC ¶¶ 84-88). However, that theory fails for the same reasons stated above. (*See supra* § III.D.1.a).

Because Plaintiffs were only granted leave to amend their UCL claim on the theory of fraudulent inducement in order to plead facts sufficient to invoke the discovery rule (Doc. 48 at 22-23), all other theories of UCL liability are barred by the Court's conclusion that Delaware law applies to claims regarding Defendants' actions as General Partners. (*Id.* at 23; *see also* SAC ¶ 110(b)-(i)). That is because a plaintiff cannot bring a claim under California's UCL when, as here, another state's law applies. *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. SACV14-01664 JVS (DFMx), 2015 U.S. Dist. LEXIS

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

186835, *16 (C.D. Cal. May 19, 2015) ("Courts…dismiss California UCL claims when an enforceable choice-of-law clause selects the law of a different state."). For those reasons, the UCL claim should now be dismissed in its entirety with prejudice.

### 8.    Plaintiffs' Jury Demand Must Be Stricken.

Plaintiffs are not entitled to a jury trial on any claims surviving this motion. A jury demand must be made "no later than 14 days after the last pleading directed to the issue is served," Fed. R. Civ. P. 38(b)(1), and the failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury, Fed. R. Civ. P. 38(d). "[O]versight or inadvertence," including "a good faith mistake of law," does not excuse the failure to make a timely jury-trial demand. *Pac. Fisheries Corp. v. HIH Cas. & Gen. Ins., Ltd.*, 239 F.3d 1000, 1002 (9th Cir. 2001). Filing an amended complaint also does not revive the right to demand a jury trial as to the issues raised in the prior complaint. *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1066 (9th Cir. 2005). Here, the SAC does not raise new issues; it merely repleads claims previously asserted in the FAC. However, Plaintiffs did not request a jury demand in either the FAC or their original Complaint. They therefore waived any right to trial by jury in this case. *See id*.

### IV.    <u>CONCLUSION</u>

Defendants respectfully ask the Court to dismiss with prejudice all claims asserted in the SAC pursuant to Rules 12(b)(2) and 12(b)(6).

DATED:  July 11, 2025

By:  */s/ Kathryn E. Wendt*

Scott S. Humphreys
Karla M. Vehrs (pro hac vice)
Kathryn E. Wendt (pro hac vice)

Attorneys for Defendants