UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEN FANG, et al., | No. 2:24-cv-01618-DJC-SCR |
| Plaintiffs, | |
| v. | ORDER |
| CMB EXPORT INFRASTRUCTURE INVESTMENT GROUP, et al., | |
| Defendants. | |

Plaintiffs Chen Fang and Yu Lin brought the present action on behalf of themselves and others similarly situated.  Plaintiffs claim that they were induced to invest in a limited partnership by Defendants' misrepresentations and that their investment was lost due to Defendants' mismanagement of the limited partnership. This case is presently before the Court on Defendants' second Motion to Dismiss (ECF No. 62).

For the reasons stated below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**BACKGROUND**

The Court provided a summary of the factual background of this case in its order resolving the prior motion to dismiss.  (ECF No. 48.)  Given the prior summary

1

and that the facts are well known to the Court and parties, the Court will not repeat them here.

The Court previously granted Defendants' first Motion to Dismiss, except as to Plaintiffs' unjust enrichment claim and Plaintiffs' claims against Patrick Hogan generally. (*Id.* at 24.)  Plaintiffs were granted leave to amend as to all claims with the exception of Plaintiffs' cause of action for imposition of a constructive trust. (*Id.*)  On April 28, 2025, Plaintiffs filed a Second Amended Complaint ("SAC") that is the present operative complaint.  (SAC (ECF No. 50).)

Defendants' Motion to Dismiss is fully briefed.  (Mot. (ECF No. 62); Opp'n (ECF No. 68); Reply (ECF No. 69).)  The Court took this matter under submission without oral argument pursuant to Local Rule 230(g).  (ECF No. 71.)

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### I.  Legal Standard

#### A.  Personal Jurisdiction Generally

Rule 12(b)(2) allows a party to assert a lack of personal jurisdiction as a defense and request dismissal of the suit.  Fed. R. Civ. P. 12(b)(2).  "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  Facts presented by the plaintiff are taken as true for the purposes of a 12(b)(2) motion to dismiss, except where

contradicted by an affidavit, and any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted); *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." (citations and internal quotations removed)).

"In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). California's long-arm statute allows the exercise of personal jurisdiction to the extent allowed by the United States Constitution. *See* Cal. Code Civ. Proc. § 410.10. Accordingly, the Court need only assess whether the exercise of jurisdiction in this case comports with due process.

**B. General and Specific Jurisdiction**

"The Due Process Clause permits the exercise of personal jurisdiction if the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Impossible Foods*, 80 F.4th at 1086. Courts may have general or specific jurisdiction over an entity depending on the nature and extent of that entity's contact with the forum state. A court may exercise general jurisdiction over a corporation in a state where the corporation is "at home," which is the case when its "affiliations . . . are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This is generally where the corporation is incorporated and where it maintains its principal place of business. *Id.* Here, it is uncontested by Plaintiffs that the Court lacks general jurisdiction over Defendant Noreen Hogan. (*See*

Opp'n at 5–9 (arguing only that the Court has specific jurisdiction over Defendant Noreen Hogan).)

Where general jurisdiction is lacking, courts may have specific jurisdiction over corporations if there is sufficient contact with the forum state and the claims arise out of that contact. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)).  In the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the first two prongs of the test" while the burden of the third prong shifts to the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1. Purposeful Availment

While the first prong of the specific jurisdiction test is often called the "purposeful availment" prong, courts situationally apply either a purposeful availment or purposeful direction analysis. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).  The question of whether to apply a purposeful direction or purposeful availment analysis "turns on the nature of the underlying claims." *Impossible Foods*, 80 F.4th at 1088 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)).  While there is no "rigid dividing line between purposeful availment and purposeful direction[,]" purposeful direction is

generally preferred when analyzing tort claims, as these claims typically involve fact patterns where "a defendant's conduct primarily occurs outside the forum state." *Id.* at 1088–89.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and internal quotations removed). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Likewise, purposeful direction involves intentional contact with the forum state. It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" that are relevant to the inquiry. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The defendant's mere knowledge that the plaintiff resides in the forum state "will not, on its own, support the exercise of specific jurisdiction." *Axiom Foods*, 874 F.3d at 1070. However, "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff . . . ." *Walden*, 571 U.S. at 286. Only purposeful contacts, and not random, fortuitous, or attenuated contacts will give rise to personal jurisdiction. *Id.*

### 2. Relation of Claim to Forum Activities

The claims brought by the plaintiff must arise out of or relate to the defendant's contacts with the forum in order for the court to exercise jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021). However, a strict causal relationship is not required to satisfy the relation prong. *Id.* Rather, there need only be a "connection" between the forum-related activity and the injury claimed. *Id.* The Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise out of the defendant's forum-related activities. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

### 3. Reasonableness

The final prong of the personal jurisdiction analysis examines whether the court exercising jurisdiction would be reasonable. *Menken*, 503 F.3d at 1058. This determination requires consideration of seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.*

## II. Analysis

The Court previously dismissed Plaintiffs' claims against Noreen Hogan on the basis that the First Amended Complaint included only minimal allegations related to Noreen Hogan. Defendants contend that Plaintiffs' additions in the SAC do not remedy this issue and assert a facial challenge to the Court's personal jurisdiction of Noreen Hogan.

The majority of the allegations in the SAC related to Noreen Hogan can be summarized as follows:

1. Noreen Hogan is President of CMB Regional Centers and has been since 2017. (SAC ¶¶ 16, 18, 83.)

2. As President of CMB Regional Centers, Noreen Hogan "manages the day-to-day operations of the Company as well as implementing strategic initiatives for CMB." This included "selling, marketing, and development of various CMB projects in California, including arranging financial and development deals throughout California." (*Id.* ¶ 18.)

3. Noreen Hogan is "the listed manager of at least two LLCs expressly targeting CMB's interests in California." (*Id.*)

6

4.  Noreen Hogan is one of two principals of NHK Capital Partners. (*Id.* ¶ 16.)

5.  "Noreen Hogan personally supervised, controlled, dominated, and operated each of the entity Defendants as their own business and alter ego[,]" there was a unity of interest between the entity defendants and Noreen Hogan, and Noreen Hogan was able to dictate and control their management and day-to-day operations for her own interest. (*Id.* ¶¶ 26, 28.)

As this list illustrates, the allegations as to Noreen Hogan in the SAC remain minimal and largely conclusory. Plaintiffs have not identified any specific actions taken by Noreen Hogan. Instead, Plaintiffs seemingly rest their argument for personal jurisdiction almost entirely on a theory of alter ego liability. The facts alleged do not support the application of such a theory to Noreen Hogan, as they are almost entirely conclusory. Particularly illustrative here are the allegations against Patrick Hogan in the SAC. Plaintiffs allege clear facts about Patrick Hogan's actions and involvement that support an assertion of alter ego liability. (*See id.* ¶¶ 26–28, 49, 65–72, 74.) By comparison, the SAC is bereft of any specific allegations regarding Noreen Hogan's control over the corporate entities and her involvement with the conduct at issue. Instead, Plaintiffs exclusively rely on conclusory allegations about Noreen Hogan's control over corporate entities.[1] These assertions are insufficient to establish an alter ego theory of liability that might be sufficient to confer personal jurisdiction.

Plaintiffs' sole allegation of personal conduct by Noreen Hogan was a letter she wrote to Plaintiffs' denying their request to withdraw from the partnership. (SAC ¶ 82.) This allegation might support personal jurisdiction over Noreen Hogan if there was a connection between that forum activity and Plaintiffs' claims. *See Ford Motor Co. v.*

---

[1] In their Opposition, Plaintiffs argue that Defendants' statement that CMB Regional Centers is a "trade name" is dispositive proof that it is simply Noreen Hogan acting under a corporate name. (Opp'n at 5.) This appears to misconstrue Defendants' statement, which is an assertion that CMB Regional Centers is a trade name for <u>other</u> corporate entities.

*Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021).  But Plaintiffs' request to withdraw was based on the fact that Plaintiffs obtained immigration status, making their investment moot.  Noreen Hogan's letter denying that request thus bears no connection to the claims at issue.  As such, this is also insufficient to establish personal jurisdiction.  *See id.*

Accordingly, Defendants' Motion is granted, and Plaintiffs' claims against Noreen Hogan are dismissed for lack of personal jurisdiction.

### MOTION TO DISMISS PLAINTIFF YU LIN FOR LACK OF STANDING

Defendant moves to dismiss Plaintiff Yu Lin for lack of standing.  (Mot. at 9.)  Plaintiffs do not raise any opposition to this portion of Defendant's Motion to Dismiss.  (*See* Opp'n.)  Defendant is correct that the SAC fails to establish Plaintiff Lin's standing to proceed on the claims in this action.  The sole statement with regard to Plaintiff Lin in the SAC is that "Plaintiff Fang became a member of Group 48 on behalf of Plaintiff Lin."  (SAC ¶ 12.)  Beyond this conclusory allegation, which lacks any further factual support, no other relevant factual allegations regarding Plaintiff Lin are included in the SAC.  Thus, based on Plaintiffs' non-opposition and the lack of support establishing Plaintiff Lin's standing, the Court grants Defendants' Motion on this basis.

### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Given that the Court previously addressed many of the arguments related to Plaintiffs' claims, the Court's discussion of these claims below does not repeat many of the factual and legal discussions provided in the Court's prior order.  Instead, the Court focuses on new factual or legal issues that are not resolved by that order.[2]

### I.    Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint

---

[2] This includes the choice of law analysis conducted in the prior order.  As these issues are not directly raised in connection with the present motion, the Court does not provide any further discussion or analysis of which state's law is applicable.

lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## II.  Inclusion of Group 48 and CMB Regional Centers as Defendants

Before addressing the individual claims, the Court addresses Defendants' argument that Group 48 and CMB Regional Centers should be dismissed as Defendants.  Plaintiffs do not raise an opposition to the Court dismissing Group 48 and CMB Regional Centers as defendants.  Based on the representations made in the Motion and Reply, dismissal of these Defendants appears appropriate at this stage. As Defendants note, the SAC does not contain any factual allegations that the Partnership (Group 48) committed any action that would render them liable. Defendants also represent that CMB Regional Centers is a trade name and not a separate entity.[3]  Accordingly, Defendants' Motion is granted as to Group 48 and CMB Regional Centers.

---

[3] While Plaintiffs do not oppose dismissal of CMB Regional Centers, Plaintiffs express some doubt in a footnote that CMB Regional Centers does not actually exist. (Opp'n at 8 n.3.)  Naturally, to the extent

**III. Fraudulent Inducement and Gross Negligence**

Defendants argue that both Plaintiffs' Fraudulent Inducement and Gross Negligence claims are untimely.  As an important threshold issue, Defendants first contend that Plaintiffs' claims do not relate back to the initial complaint.  Whether the relation back doctrine applies to Plaintiffs' claims has a significant impact on their timeliness.

Plaintiffs have filed three complaints in this action.  The initial complaint was filed on August 10, 2022 (ECF No. 46-2), the First Amended Complaint was filed on May 7, 2024 (ECF No. 46-135), and the current SAC was filed April 28, 2025 (ECF No. 50).  Given the nearly 21-month gap between the filing of the initial complaint and the First Amended Complaint, if Plaintiffs' claims relate back only to the First Amended Complaint, not the initial complaint, there is a substantial temporal difference that affects the application of the relevant statutes of limitation.

Under the Federal Rules of Civil Procedure, an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" or where "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A), (B).  Thus, "if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would not otherwise relate back under the federal rules."  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014).  Under California law, an amended claim relates back if it (1) rests on the same general set of facts, (2) involves the same injury, and (3) refers to the same instrumentality as alleged in the original complaint.  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 408–09 (1999).  "Under Delaware law, a court may grant leave to amend a complaint that adds a new party

later information suggests the existence of CMB Regional Centers, they may seek to amend to include claims against them as a defendant.

and allow those claims to relate back to the date of the original filing if: (1) the claims asserted in the amended pleading arises from the conduct, transaction, or occurrence advanced in the original pleading; (2) the new party in the amended pleading received adequate notice of the action so as not to be prejudiced in maintaining a defense on the merits; (3) the new party knew or should have known that the action would have been brought against it but for a mistake; and (4) the notice and knowledge factors were satisfied within the period prescribed for service of process." *Blattman v. Siebel*, No. 15-cv-00530-GMS, 2017 WL 1217209, *5 (D. Del. Mar. 31, 2017).

It is clear that Plaintiffs' fraudulent inducement and gross negligence claims do not relate back to Plaintiffs' initial complaint.  The original complaint, filed in Los Angeles County Superior Court, exclusively addresses Plaintiffs' attempts to recover their investment on the basis that Defendants had denied Plaintiffs a refund despite Plaintiffs obtaining immigration status without the need for the EB-5 investment.  (*See* ECF No. 46-135.)  That complaint is only seven pages long, and the core factual allegations are reproduced here:

> 10. In June 2015, Plaintiff Fang, on behalf of Plaintiffs, executed a Limited Partnership Agreement ("LPA," Exhibit) with Defendant Group 48 LP. Defendant CMB Export and Defendant NK are general partners of the limited partnership, controlled by Defendant Hogan.

> 11. The purpose of the agreement under the LPA is "[T]he investor seeks to apply for a green card (permanent residenc[y]) under the EB-5 Immigrant Investor Program[,] and does not require an economic profit on his/her investment" (pg.1). Plaintiffs transmitted $550,000 to Defendant Group 48 LP in July 2015.

> 12. Defendants then made a loan for the construction, renovation and operation of "The Century Plaza Hotel," currently known as "Fairmont Century Plaza" located at 2025 Avenue of the Stars in Los Angeles, California.

13. In May 2022, Plaintiff Lin became a permanent resident. Plaintiff Fang also has been adjusting status to become a permanent resident.

14. In May and June 2022, Plaintiffs notified Defendants of Plaintiffs' new status, and requested refund. Plaintiffs sent the third email in July 2022.

15. Defendants denied Plaintiffs' request in June and July 2022, that Defendants want to see a "denial of [Plaintiffs'] conditional residency and provide notice of such denial to the Partnership…", and that "In addition, even if [Plaintiffs] were eligible to withdraw from the Partnership…the Partnership at this time is under no obligation to return [Plaintiffs'] capital."

(ECF No. 46-1 ¶¶ 10–15.)

Nowhere in the initial complaint do Plaintiffs assert Defendants had engaged in fraud, misrepresentation, negligence, or any other misconduct, besides the failure to provide a refund after Plaintiffs obtained immigration status separately. The initial complaint also does not discuss or even reference the events that led to Plaintiffs' investment beyond stating the alleged purpose of the agreement under the LPA and that "Plaintiffs transmitted $550,000 to Defendant Group 48 LP in July 2015." (ECF No. 46-1 ¶ 11.) That complaint is connected only to the present claims in that it also concerns Plaintiffs' investment in the Partnership. Plaintiffs' present claims of fraudulent misrepresentation and gross negligence thus do not relate back to this initial complaint, regardless of what relation back rules are applied. Instead, these claims and relevant factual allegations first appear in Plaintiffs' First Amended Complaint, which was filed on May 7, 2024. (*See* ECF No. 46-135.)

Plaintiffs assert that the present claims relate back to the initial complaint as that complaint was "based on the same transactions and facts that occurred here, giving Defendants all the notice they needed regarding the transactions on which the lawsuit was based." (Opp'n at 13.) While the relation back doctrine "is to be liberally applied[,]" *Clipper Exxpress v. Rocky Mtn. Motor Tariff Bureau, Inc.*, 690 F.2d 1240,

12

1260 n.29 (9th Cir. 1982), Plaintiffs' argument still greatly overstates this rule.  It is true that, in the broadest possible sense, there is commonality in the most fundamental factual details of the complaints as both concern Plaintiffs' investment in Group 48.  But the fact that there is a high-level connection does not establish "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  The common core of operative facts must be sufficient "so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Asarco, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (internal citations and quotations omitted).  The Supreme Court has rejected such boundless readings of the relation back doctrine to permit claims to relate back so long as they are roughly connected to some broader event.  *See Mayle*, 545 U.S. at 660–63 (rejecting argument that habeas claims related back to a prior habeas petition so long as they concerned events at the same trial).  Plaintiffs cannot reasonably assert that their initial complaint – which exclusively focused on the denial of a refund on an entirely unrelated basis to the claims here – could have put Defendants on fair notice that Plaintiffs were calling into question the events surrounding Plaintiffs' initial investment in the Partnership and Defendants' conduct in obtaining that investment.

The Court thus finds that Plaintiffs' fraudulent inducement and gross negligence claims do not relate back to the initial complaint.[4]  As such, the Court uses the date the First Amended Complaint was filed, May 7, 2024, in determining whether these claims are timely.

In addressing the timeliness of these claims, Plaintiffs also assert that the delayed discovery rule should apply.  Specifically, Plaintiffs assert that they could not have discovered Defendants' alleged misrepresentations in inducing Plaintiffs' investment until August 14, 2020, "when it was revealed for the first time that Mr.

---

[4] As is addressed further below, other claims in the SAC do not relate back to the initial complaint for the same reasons.

13

Hogan had waited six months to report to Limited Partners that J.P. Morgan had declared the construction loan 'out of balance.'" (SAC ¶ 84; *see* Opp'n at 28 ("The SAC alleges that . . . Plaintiffs had no reason to discover the fraud until August 2020[.]").) Ultimately though, the application of the delayed discovery rule is irrelevant.

Both claims are subject to, at a maximum, a three-year statute of limitations, regardless of whether California or Delaware law applies. *See Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001); *see* 10 Del. C. § 8106; *Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006) ("the applicable statute of limitations is 10 Del. C. § 8106, which imposes a three-year period for claims of negligent misrepresentation"); *see also* Cal. Civ. Proc. Code section 338(d); *Ventura Cnty. Nat. Bank v. Macker*, 49 Cal. App. 4th 1528, 1531 (1996) (applying a two or three-year state of limitations depending on whether a negligent misrepresentation claim more closely resembled fraud or negligence). Thus, even accepting Plaintiffs' claims of delayed discovery, the SAC does not establish that these claims are timely, as the discovery occurred over three years prior to the First Amended Complaint being filed.

Accordingly, Defendants' Motion is granted as to these causes of action, which shall be dismissed without leave to amend.[5]

**IV. Breach of Fiduciary Duty**

For the same reasons discussed above as to the timeliness of Plaintiffs' fraudulent inducement and gross negligence claims, *see supra* Motion to Dismiss for Failure to State a Claim, III, the Court also finds that, as a whole, Plaintiffs' breach of fiduciary duty claim is untimely. As with those claims, the factual allegation and claims in Plaintiffs' initial complaint are unrelated to any assertion that the General Partners breached their fiduciary duty to the Limited Partners. This claim was instead first

---

[5] To the extent that Plaintiffs raise negligence claims regarding Defendants' management of the partnership, the Court does not address that portion of the negligence claim as it was previously dismissed with prejudice in the prior order based on application of the economic loss rule.

14

raised in the First Amended Complaint filed on May 7, 2024.  (*See* ECF No. 46-135.) While Plaintiffs again seek to invoke the discovery rule, the factual allegations in the SAC only support application of that rule until August 2020.  As such, these claims are untimely as the First Amended Complaint, which first raised these claims, was filed beyond Delaware's three-year statute of limitations for such claims.  Accordingly, Plaintiffs' breach of fiduciary duty claim shall be dismissed as untimely.

## V.  Breach of Contract

The Court previously dismissed Plaintiffs' breach of contract claim based in part on Plaintiffs' failure to identify specific provisions of the contract allegedly breached by Defendants.  In the SAC, Plaintiffs identify three provisions of the LPA that Defendants allegedly breached: Limited Partnership Agreement ("LPA") §§ IV.C.3, VI.A.3, and VI.G.  Defendants challenge the sufficiency of Plaintiffs' breach of contract claims as to each of these provisions.

Article IV, section C.3 of the LPA states:

> <u>Investments</u>. The Partnership shall use commercially reasonable efforts to advance and accomplish the Partnership's business and purpose as set forth in Article III of this Agreement. The Partnership intends to limit its initial investment activities to investments in a private business located within the geographical jurisdiction of the Regional Center as approved by the USCIS in order to assist in job creation within the areas comprising the current geographic scope of the Regional Center. Nothing contained in this Section shall be construed to limit the General Partner's ability to reinvest the Cash Flow from Return of Investment in another investment, even if such reinvestment is outside of the geographical jurisdiction of the Regional Center, if such reinvestment is consistent with the business and purpose of the Partnership as stated in Article III.

(LPA (SAC, Ex. G) § IV.C.3.)  Article VI, section A.3 grants the General Partner the power "to use commercially reasonable efforts to meet the objectives of the Partnership," along with specific provisions elucidating what this power permitted.

15

(LPA § VI.A.3.)  The SAC asserts Defendants breached these provisions through a variety of acts and omissions including "commencing the project without securing the alleged Deutsche Bank financing, restructuring the construction financing multiple times in commercially unreasonable ways (while collecting a fee for doing so), borrowing money from Reuben Brothers while granting it the right to extinguish the rights of Group 48 members, and permitting the project to fall into default and foreclosure."  (SAC ¶¶ 118–19.)  Finally, Article VI, section G imposes a broad good faith duty on the General Partner, stating in relevant part:

> The General Partner shall perform its duties in good faith, in a manner it reasonably believes to be in the best interests of the Partnership and its Partners, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

(LPA § VI.G.)

Defendants correctly note that article VI, section A.3 of the LPA only grants powers to the General Partners.  Similarly, standing alone, article IV, section C.3 does not directly impose a duty on the General Partners.  That section is express in imposing obligations on the Partnership to use commercially reasonable efforts, not the General Partner.  Plaintiffs argue that this would effectively mean that these provisions do not have any binding standalone effect.  This may be true, but Plaintiff does not provide a specific basis to read these provisions of the LPA any other way.

However, article VI, section G of that article does create a duty on the General Partner to "perform its duties in good faith" and in a manner "it reasonably believes to be in the best interests of the Partnership and its Partners[.]"  (LPA § VI.G.)  This imposes an obligation on the General Partner to act in the best interest of the Partnership.  As noted above, article IV, section C.3 of the LPA states that "[t]he Partnership shall use commercially reasonable efforts to advance and accomplish the Partnership's business and purpose as set forth in Article III of this Agreement."  The

16

requirement for the General Partner to act in the best interests of the Partnership article VI, section G, could incorporate the provisions of article IV, section C.3 given that it arguably defines what is in the best interest of the Partnership.  Thus, while standing alone, article IV, section C.3 does not impose any duties on the General Partner, via article VI, section G, Plaintiffs' claims under both sections are adequately alleged.

Defendants do not contest that article VI, section G imposes a duty on the General Partner.  They instead argue that some of Plaintiffs' claims of breach as to that specific section are untimely for largely the same reasons discussed above.  *See supra* Motion to Dismiss for Failure to State a Claim, III.  Specifically, Defendants argue that Plaintiffs' claims that Defendants breached the LPA by (1) "taking on the job of general partner without the experience and skill necessary to handle the project[,]" (2) "taking on the role of general partner in dozens of other partnerships," (3) "failing to monitor the affairs of the Partnership," and allegedly taking (4) "fees each time the construction loans were restructured."  (Mot. at 23.)

These claims do not relate back to the initial complaint for the same reasons Plaintiffs' fraudulent inducement and gross negligence claims do not relate back.  *See supra* Motion to Dismiss for Failure to State a Claim, III.  As such, the first and last of these claims are untimely.  The decision to take on the job of general partner necessarily occurred at the start of the partnership.  The last restructuring noted in the SAC was also raised well beyond the three-year statute of limitations for this claim.  (SAC ¶¶ 67, 69.)  As with the above, the delayed discovery asserted by Plaintiffs does not save these claims.  Plaintiffs' allegation that Defendants breached their duty by becoming the general partner in "dozens of other partnerships" is also untimely.  This allegation appears to reference an earlier allegation in the SAC wherein Plaintiffs assert that "[t]he Group 48 Limited Partnership was closed and funded by September 25, 2015.  At the time Defendants took on this project, the General Partner was already responsible for the management of dozens of limited partnership projects."

17

(SAC ¶ 44.)  It seems unlikely that these claims would be subject to delayed discovery on the basis that Plaintiffs assert in the SAC.  (*See* SAC ¶¶ 84–88.)  But even if they were, for the same reasons discussed previously, these claims would still be untimely as they do not relate back to the initial complaint, and the time between delayed discovery and filing of the First Amended Complaint is greater than three years.

Finally, Defendants assert that Plaintiffs' claim that Defendants "failed to monitor the affairs of the partnership" is also barred by the statute of limitations. However, it is not immediately clear that this portion of the claim is untimely.  Unlike the claims addressed above, Plaintiffs' claim that Defendants failed to monitor the affairs of the partnership is not temporally bound to the beginning of the Partnership. Instead, this is a more general claim that, during the course of the Partnership, Defendants failed to appropriately monitor the Partnership's affairs.  Certainly, with the benefit of discovery, it may become apparent that some or all of this claim accrued and run before the complaints were filed.  But, as alleged, this claim presently appears timely.[6]  Accordingly, Defendants' Motion to Dismiss is denied in part as to Plaintiffs' claim that Defendants breached article VI, section G of the LPA by failing to monitor the affairs of the partnership and breached article IV, section C.3 of the PLA.

**VI. Implied Covenant of Good Faith and Fair Dealing**

The Court will permit Plaintiffs' claim based on breach of the implied covenant of good faith and fair dealing to proceed at this stage.  Defendants argue that Plaintiffs' implied covenant claim is covered by the terms of the LPA, and thus cannot be asserted.[7]  Defendants first rest on the powers and discretion granted by article VI, section A of the LPA.  But it is not readily apparent that this grant of discretion precludes any claim that Defendants breached an obligation to not self-deal.

[6] Some or all of Plaintiffs' breach of contract claim under article IV, section C.3 may also be untimely, but this issue is not presently before the Court.

[7] Defendants also argue that this claim is impermissibly vague.  The Court is unpersuaded on this point. At the present pleading stage, the SAC is sufficiently clear that Plaintiffs assert Defendants violated the covenant by prioritizing their self-interests to the detriment of the limited partners and the partnership.

Defendant also argues this claim is duplicative of Plaintiffs' breach of contract claim based on article VI, section G of the LPA, which provides that the General Partner shall perform its duties in good faith. However, as Plaintiffs note, this provision only imputes a good faith obligation on the Defendants. It does not mandate that the General Partner act fairly "consistent[] with the terms of the parties' agreement and its purpose." *ArchKey Intermediate Holdings, Inc. v. Mona*, 302 A.3d 975, 1003 (Del. Ch. 2023). It is possible that this claim is ultimately duplicative, but at this stage, this does not appear to be the case. Accordingly, Defendants' Motion to Dismiss is denied as to the implied covenant claim.

## VII.  Unjust Enrichment

Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is granted. Plaintiffs made clear in their Opposition that their unjust enrichment claim is predicated on claims that Defendants fraudulently induced the contract. (*See* Opp'n at 26 ("Where, as here, the unjust benefit received is the contract itself . . .").) Thus, this claim, which is subject to a three-year statute of limitations, is untimely on the same basis as Plaintiffs' fraudulent inducement claims for the reasons discussed above. *See supra* Motion to Dismiss for Failure to State a Claim, III.

## VIII.  UCL Claim

Defendants' Motion to Dismiss is denied as to Plaintiffs' UCL claim. Plaintiffs' UCL claim is predicated on similar allegations that Defendants induced Plaintiffs' investment via fraud, which the Court found to be untimely above. However, unlike those claims, California imposes a four-year statute of limitations. As such, based on Plaintiffs' asserted delayed discovery until August 2020, these claims were brought within the limitation period based on their inclusion in the First Amended Complaint. While Defendants argue that an earlier date of delayed discovery should apply based on "prior correspondence" from Defendants, that is an issue that must be addressed at the summary judgment, as it relies on factual issues that cannot be resolved at this

19

stage.  As alleged, Plaintiffs' claim accrued in August 2020, making them timely. Defendants' Motion as to this claim is thus denied.

## JURY TRIAL DEMAND

Defendants argue that Plaintiffs' jury trial demand should be stricken as no such claim demand was made in the initial complaint or the later First Amended Complaint. Plaintiffs do not contest that their prior complaints failed to raise a jury trial demand. Instead, they argue that the Court should exercise its discretion under Federal Rule of Civil Procedure Rule 39(b), to order a jury trial.  (Opp'n at 28.)  Given the apparent concession that a jury trial demand was not properly made in the initial complaint or the FAC, Plaintiffs have waived their right to a jury trial.  *See* Fed. R. Civ. P. 38(b)(1), (d). Plaintiffs may bring a properly noticed motion arguing for the Court to permit a jury trial under Rule 39(b), but this issue is not properly before the Court at this time. Accordingly, Defendants' request to strike Plaintiffs' jury trial demand is granted.

## CONCLUSION

Accordingly and for the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss (ECF No. 62) is GRANTED IN PART and DENIED IN PART as follows:

    a. Defendants' Motion is granted as to Plaintiffs' claims against Noreen Hogan, Group 48, and CMB Regional Centers, which are dismissed from this action without leave to amend.

    b. Defendants' Motion is granted as to Plaintiff Yu Lin, and Plaintiff Yu Lin's claims are dismissed for lack of standing.

    c. Defendants' Motion is granted as to Plaintiffs' claims for fraudulent inducement, gross negligence, breach of fiduciary duty, and unjust enrichment, which are dismissed as untimely without leave to amend.

    d. Defendants' Motion is also granted as to Plaintiffs' breach of contract claim, except as to Plaintiffs' claim that Defendants "failed

to monitor the affairs of the partnership" for which Defendants' Motion is denied and Plaintiffs' claim that Defendants breached article IV, section C.3 of the LPA.  The rest of Plaintiffs' breach of contract claim is otherwise dismissed without leave to amend.

    e. Defendants' Motion is denied as to Plaintiffs' implied covenant and California UCL claims.

2. Defendants' Motion to Strike Plaintiffs' Jury Trial Demand (ECF No. 62) is also GRANTED.

3. Defendants' Request for Judicial Notice (ECF No. 70) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated:   **March 31, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

21